EXHIBIT A

Dawn M. Smith, Esq., SBN 222481
Eric D. Hitchcock, Esq., SBN 230630
SMITH CLINESMITH, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
eric@smithclinesmith.com
Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF TULARE

**09/11/2020**

STEPHANIE CAMERON, CLERK
Nay Saelee, Deputy

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

# IN AND FOR THE COUNTY OF TULARE

GARY GAGLIOLO, Individually and as Successor-In-Interest to the ESTATE OF JOSEPH GAGLIOLO,
　　Plaintiffs,

v.

KAWEAH MANOR INC., d/b/a KAWEAH MANOR CONVALESCENT HOSPITAL; SPRUCE HOLDINGS LLC, d/b/a REDWOOD SPRINGS HEALTHCARE CENTER; AND DOES 1-50,
　　Defendants.

Case No.: **VCU284261**

**PLAINTIFFS' COMPLAINT**

1. **NEGLIGENCE**
2. **WILLFUL MISCONDUCT**
3. **VIOLATIONS OF THE ELDER AND DEPENDENT ADULT CIVIL PROTECTION ACT [Welf. & Instit. Code §§ 15600 *et seq.*]**
4. **WRONGFUL DEATH**

**JURY TRIAL DEMANDED**

**Case Management Conference**
01/12/2021 08:30 AM - Department 07

**Assigned to Judicial Officer**
Bret Hillman
**For All Purposes**

-1-
COMPLAINT

COMES NOW Plaintiffs, Gary Gagliolo, Individually and as Successor-in-Interest to the Estate of Joseph Gagliolo, by and through undersigned counsel, and for their Complaint and Demand for Jury Trial against the Defendants states the following:

## JURISDICTION AND VENUE

1. This cause of action is appropriate in Tulare County inasmuch as Defendants' facilities are located in Tulare County, and a substantial part of the events, acts, omissions and transactions complained of herein occurred in this County.

2. Defendants have sufficient minimum contacts with California, or otherwise purposefully avails themselves of benefits and protections of California, or does business in California so as to render the exercise of jurisdiction over them by the California courts consistent with the traditional notions of fair play and substantial justice.

3. Because Defendants have caused events to occur in Tulare County, by which the causes of action alleged in this complaint have arisen, proper venue lies with this Court.

## THE PARTIES

4. At all relevant times, Decedent JOSEPH GAGLIOLO was a 91 year old elderly resident of Tulare County, California.

5. Plaintiffs' injuries and damages arise from events that occurred in Tulare County, California.

6. Defendant KAWEAH MANOR, INC., d/b/a KAWEAH MANOR CONVALESCENT HOSPITAL ("KAWEAH" or "Defendant") was at all relevant times a domestic corporation doing business in Tulare County, State of California. Defendant may be served with process through its registered agent, Kensett J. Moyle, 4216 South Mooney Boulevard, Suite 351, Visalia, California 93277.

7. Defendant SPRUCE HOLDINGS LLC, d/b/a REDWOOD SPRINGS HEALTHCARE CENTER ("REDWOOD SPRINGS" or "Defendant") was at all relevant times a domestic limited liability company doing business in Tulare County, State of California. Defendant may be served with process through its registered agent, Jennifer M. Sternshein, Esq., 5316 E. Chapman Avenue, Orange, California 92869.

8. Plaintiffs are informed and believe and thereupon allege that defendants and DOES 1 to 50, inclusive are, and, at all times relevant to the acts and occurrences alleged herein, were in the business of providing long-term care as a 24-hour health care facility as defined in §1250(c) of the Health & Safety Code and were subject to the requirements of Federal and State law. Plaintiffs are informed and believe that defendants and DOES 1-50, inclusive are and were the owners, managers and/or alter-egos of defendants and one another, and ratified the conduct of defendants, each other and their respective agents and employees and are therefore vicariously liable for the acts and omissions of these co-defendants, their agents and employees, as is more fully herein alleged.

9. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 to 50 inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs are ignorant of the true names and capacities of the nurses and/or medical staff on duty and present during the occurrences herein alleged at KAWEAH and REDWOOD SPRINGS, and therefore sue these nurses or medical staff by the fictitious names of defendants DOES 1 to 25 inclusive. Plaintiffs are also ignorant of the true names and capacities of the various administrators, officers, and directors of defendants, sued herein as DOES 26 to 50, inclusive, and therefore sue them by such fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint to identify said defendants when their identities are

ascertained. Plaintiffs are informed and believe and thereon allege that DOES 1 through 50, were licensed or unlicensed health care providers, rendering health care as a skilled nursing facility, and in the respective capacities of Owners, Managers, Administrators, nurses, physician director, or otherwise, agents or employees, to patients, including Decedent JOSEPH GAGLIOLO (hereinafter "Decedent"). Plaintiffs are informed and believe and on that basis allege that each of the fictitiously named defendants was in some fashion or manner liable and legally responsible for the damages and injuries set forth herein.

10. In doing the things hereinafter alleged, defendants and the DOE defendants, and each of them, acted as the agents, servants and employees and alter egos of their co-defendants, acted within the course and scope of said agency and employment, with the knowledge, consent and approval of their co-defendants; and their conduct was ratified by their co-defendants. In particular, at all times material hereto, defendants, individually and through their officers, directors, and/or managing agents, (1) had advance knowledge of the unfitness of their respective employees and employed said employees with a conscious disregard of the rights and safety of others, (2) authorized the wrongful conduct alleged in this complaint, (3) ratified said wrongful conduct, or (4) were personally guilty of oppression, fraud, malice, and/or recklessness.

11. Under the provisions of Welfare & Institutions Code §15610.27, while a resident at KAWEAH and REDWOOD SPRINGS, Decedent was at all times mentioned an "elder" and defendants were "care custodians" as defined in Welfare & Institutions Code §15610.17.

## FACTS

12. Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees, or representatives did such act or thing and that at the time of such act or thing was done, it was done with the full authorization or ratification of the Defendant, with implied or apparent authority, or was done in the normal routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

13. In or around 2016, Decedent was admitted to KAWEAH because of his need for continuous care. He was known to be a fall risk, and his bed had an alarm. At some point, the alarm was removed or deactivated.

14. On or about October 11, 2019, Decedent got out of bed to use the restroom. He then fell, and suffered a fractured left hip/femur as a result of the fall. He was then transferred to Kaweah Delta Medical Center ("KDMC") for surgery. He remained at KDMC until on or about October 16, 2019.

15. On or about October 16, 2019, Decedent was admitted to REDWOOD SPRINGS. During Decedent's residence at REDWOOD SPRINGS, his son Gary Gagliolo was notified by REDWOOOD SPRINGS that two of its residents and six of its staff tested positive for COVID-19.

16. On April 15, 2020, Gary Gagliolo was informed by REDWOOD SPRINGS that Decedent had tested positive for COVID-19, but was asymptomatic.

17. At some point between April 15, 2020 and April 27, 2020, Gary Gagliolo was informed by REDWOOD SPRINGS that Decedent was having breathing problems. At some point prior to his death, Decedent was also diagnosed with pneumonia.

18. On April 27, 2020, Decedent passed away at REDWOOOD SPRINGS. His death certificate indicates his causes of death as Cardiopulmonary Arrest, Acute Respiratory Failure, Pneumonia and COVID-19. See Death Certificate of Joseph Gagliolo, attached hereto as Exhibit 1 and hereby incorporated by reference.

19. During his residence at KAWEAH and REDWOOD SPRINGS, Defendants knew that Decedent was in a compromised physical state. As a result of Decedent's comorbidities, he required close supervision, close monitoring, and medical attention to ensure his health, safety and well-being.

20. Defendants knew that by virtue of his physical and mental state, Decedent was dependent upon them for nursing and other health care services.

21. Defendants also knew by virtue of Decedent's physical state that he was dependent upon them for his activities of daily living including, but not limited to, feeding and dietary planning, skin care, hygiene, infection control/prevention, toileting, and physical rehabilitation/exercise. Furthermore, Defendants knew Decedent required substantial assistance with bathing and basic hygiene.

22. Despite Defendants' knowledge and awareness of Decedent's needs during his residence at Defendants' KAWEAH and REDWOOD SPRINGS facilities, Decedent did not receive the proper supervision and care necessary to prevent Decedent from suffering a fractured hip, pneumonia, COVID-19, and other injuries.

23. When Decedent was admitted to KAWEAH and REDWOOD SPRINGS, he was to have been provided with custodial care, appropriate medical monitoring, therapy, healthcare and nutrition, hygiene, and all that one would expect of a skilled care facility to facilitate treatment of his medical conditions. Defendants had a non-delegable duty to regularly

monitor Decedent's mental and physical condition, including, but not limited to care and treatment related to his weakened condition and lack of mobility.

24. As a result of the reckless neglect of Decedent by defendants and each of them, Decedent suffered falls, fractures, pneumonia and COVID-19.

25. KAWEAH had knowledge that the care plans put in place for Decedent were inadequate to meet his needs, as evidenced by falls, a fractured left hip/femur and other injuries.

26. KAWEAH's neglect of Decedent was not a one-time occurrence. Defendant's neglect was ongoing over the duration of Decedent's residence with Defendant. Decedent suffered falls, fractures and other injuries during his residence with Defendant.

27. KAWEAH did not provide needed care to Decedent. Defendants failed to prevent Decedent's falls, fractures, and other injuries.

28. REDWOOD SPRINGS had knowledge that the care plans put in place for Decedent were inadequate to meet his needs, as evidenced by Decedent's development of pneumonia, COVID-19, and other injuries.

29. REDWOOD SPRING's neglect of Decedent was not a one-time occurrence. Defendants' neglect was ongoing over the duration of Decedent's residence with Defendants. Decedent suffered pneumonia, COVID-19 and other injuries.

30. REDWOOD SPRINGS did not provide needed care to Decedent. Defendants failed to prevent Decedent's pneumonia, COVID-19 and other injuries.

31. Despite their awareness of the risks to Decedent's health and well-being, the care custodian defendants and each of them repeatedly and flagrantly violated several provisions of title 22 of the California Code of Regulations as follows:

a. failed to frequently monitor Decedent's condition in order to prevent injury [§72311(a)(1)(A)];

b. failed to develop a care plan with measurable objectives to assure Decedent received adequate care [§72311(a)(1)(B)];

c. failed to implement a reasonable care plan to address her treatment needs;

d. failed to notify Decedent's treating physician of adverse changes in her condition [§72311(a)(3)(B)];

e. failed to properly organize, manage, operate, and/or control KAWEAH and REDWOOD SPRINGS [§72501];

f. violated Decedent's right to be free from mental and/or physical abuse [§72527(a)(9)];

g. violated Decedent's right to be treated with consideration, respect and full recognition of dignity and individuality, including privacy in treatment and in care of personal needs [§72527(a)(11)];

h. failed to document reasons for the denial or limitations of Decedent's rights in his health record;

i. KAWEAH failed to develop a comprehensive care plan for Decedent which included measurable objectives and timetables to meet his medical, nursing, mental and psychosocial needs identified in the comprehensive assessment for Decedent; more specifically, they failed to develop a realistic plan to prevent falls, fractures, and other injuries. [§72311(a)(2)];

j. REDWOOD SPRINGS failed to develop a comprehensive care plan for Decedent which included measurable objectives and timetables to meet his medical, nursing,

mental and psychosocial needs identified in the comprehensive assessment for Decedent; more specifically, they failed to develop a realistic plan to prevent pneumonia, COVID-19, and other injuries. [§72311(a)(2)];

k. failed to maintain an adequate number of qualified personnel to carry out the functions of the facility, especially in light of the number of patients in its facility and the acuity of care necessary for the population of patients; KAWEAH and REDWOOD SPRINGS also failed to maintain the bare minimum daily average of 3.0 nursing hours per patient per day [§§72329(a) and (f), 72501(e)].

l. In addition, and also despite their awareness of the risks to Decedent's health and well-being, the care custodian defendants and each of them failed to employ an adequate number of qualified personnel at KAWEAH and REDWOOD SPRINGS throughout the course of Decedent's residency, a repeated and flagrant violation of Health and Safety Code §1599.1(a).

32. As a direct and legal result of the foregoing, Decedent was injured and sustained personal injury in a sum according to proof at trial.

33. As a further and direct result of the foregoing, Decedent required ongoing related care and has incurred medical expenses in a sum according to proof at trial.

34. Decedent's injuries were entirely preventable had Defendants properly provided their facilities with sufficient staff, in number and training, to provide him with that amount of care that laws and regulations required.

35. Decedent's injuries would not have occurred but for the complete willful disregard by Defendants of their duties owed to Decedent.

## COUNT I – NEGLIGENCE

**(As To All Defendants)**

36. Plaintiffs incorporate paragraphs 1-37, inclusive, as though set forth in full herein.

37. Decedent was a resident of KAWEAH and DOES 1-50 and under the care of Defendants, and each of them, from in or around 2016 until on or about October 11, 2019. By virtue of the foregoing, Defendants and each of them owed a duty of ordinary care to Decedent, to use that degree of care and skill that a reasonably prudent person would use under the same or similar circumstances, including but not limited to a duty to:

   A. Ensure that each care worker receive adequate training before working with Decedent;

   B. Properly handle and implement measures to prevent Decedent from suffering falls, left hip/femur fractures, and other injuries;

   C. Note and properly react to emergent conditions, and provide timely medical care to Decedent or otherwise act appropriately when conditions indicate; and

   D. Treat Decedent as an individual with respect, dignity, and without abuse.

38. Defendants and each of them breached the aforesaid duty of care.

39. As a direct and legal result of Defendants' tortious misconduct, Decedent suffered personal injuries and economic damages, including medical expenses, in a sum to be proven at the time of trial. Decedent suffered tremendous physical, emotional, and economic harm as well as other damages in an amount to be determined according to proof.

40. Decedent was a resident of REDWOOD SPRINGS and DOES 1-50 and under the care of Defendants, and each of them, from on or about October 16, 2019 through April 27, 2020. By virtue of the foregoing, Defendants and each of them owed a duty of ordinary care to

Decedent, to use that degree of care and skill that a reasonably prudent person would use under the same or similar circumstances, including but not limited to a duty to:

A. Ensure that each care worker receive adequate training before working with Decedent, including, but not limited to, infection control;

B. Properly handle and implement measures to prevent Decedent from contracting pneumonia, COVID-19, and suffering other injuries;

C. Note and properly react to emergent conditions, and provide timely medical care to Decedent or otherwise act appropriately when conditions indicate; and

D. Treat Decedent as an individual with respect, dignity, and without abuse.

41. Defendants and each of them breached the aforesaid duty of care.

42. As a direct and legal result of Defendants' tortious misconduct, Decedent suffered personal injuries and economic damages, including medical expenses, in a sum to be proven at the time of trial. Decedent suffered tremendous physical, emotional, and economic harm as well as other damages in an amount to be determined according to proof.

## COUNT II WILLFUL MISCONDUCT

### (As to all Defendants)

43. Plaintiffs incorporate each and every allegation set forth above, as though fully set forth herein, except those allegations inconsistent with a cause of action for Willful Misconduct.

44. Because Decedent was a patient and resident of KAWEAH and REDWOOD SPRINGS, defendants and DOES 1 to 50, inclusive, had a duty under California laws and regulations designed and implemented for the protection and benefit of skilled nursing patients including Decedent to provide their patients with care, comfort and safety.

45. Defendants and DOES 1 to 50, inclusive owed a duty to Decedent to provide him with 24-hour nursing care and physician services necessary to attain and maintain Decedent's highest practicable level of physical, mental and psychosocial well being.

46. In addition, and without limiting the generality of the foregoing, defendants and DOES 1 to 50 provide skilled nursing care and physician services in accordance with the prevailing California laws and regulations;

   a. follow, implement and adhere to all physicians' orders, including the administration of medication, and treatment of skin conditions;

   b. establish and implement a patient-care plan for Decedent based upon and including without limitation an ongoing process of identifying her care needs;

   c. maintain nursing and other staffing at levels adequate to meet the needs of Decedent;

   d. follow proper nursing and physician care standards to maximize the health, safety and well-being of Decedent;

   e. note and properly react to emergency conditions and to timely transfer Decedent to an acute care facility or otherwise act when conditions so indicated;

   f. maintain accurate records of Decedent's condition, treatment and activity;

   g. employ nursing staff with the qualifications to provide the necessary nursing services for Decedent;

   h. implement the facility policy and procedures consistently;

   i. keep all current clinical information centralized in Decedent's health record;

   j. provide appropriate records for physicians and ancillary orders;

47. Defendants and DOES 1 to 50, inclusive and each of them, willfully and/or recklessly ignored or otherwise violated the state laws and regulations designed to protect patients of

skilled nursing facilities, including Decedent; said laws include, without limitation, those statutes and regulations set forth herein.

48. These breaches were intentional and in reckless disregard for the probability that severe injury would result from defendants' failure to carefully adhere to their duties.

49. Defendants and DOES 1 to 50, inclusive and each of them, knew or should have known in the exercise of reasonable diligence, that there was a probability that injury to Decedent would result from their failure to perform their duties.

50. In particular, and without limiting the generality of the foregoing, defendants, and each of them failed to provide the requisite care and treatment as alleged herein.

51. At all times herein mentioned, defendants and DOES 1 to 50, inclusive, and each of them, knew of the existence of these regulations and laws and knew that the lives and health of residents such as Decedent were at risk whenever defendants failed to meet such duties.

52. Defendants and DOES 1 to 50, inclusive, and each of them, knew their routine, pattern and repeated failure to comply with such duties would probably result in injuries to residents, including Decedent and in fact, did result in injury to Decedent.

53. In breaching their duties to Decedent, defendants acted intentionally and in conscious disregard of the health and safety of their residents, including Decedent, all according to the plan of maintaining inadequate resident care, thereby unlawfully increasing the profitability of defendants and DOES 1-50's business operations.

54. That is, defendants and DOES 1-50, determined that they would ignore common and basic legally required minimum care to the elders under their care and custody for the sole purpose of increasing profits irrespective of the mayhem defendant's conduct was reaping upon the elderly, including Decedent.

55. In doing the acts alleged herein, defendants and DOES 1 to 50, inclusive, and each of them, breached certain duties which would require them to devote resources to the care and treatment of patients like Decedent and to maintain adequate staffing levels, not to divert those resources solely to the attainment of profit goals.

56. The conduct of defendants, as alleged, constitutes neglect as defined in Welfare & Institutions Code §15610.57 in that said defendants failed to exercise the degree of care that a reasonable person having the care and custody of Decedent would exercise. The "neglect" as defined in Welfare & Institutions Code, §15610.57 constitutes abuse of an elder as contemplated by the Elder and Dependent Adult Civil Protection Act [EADACPA] and *Delaney v. Baker* (1999) 20 Cal.4th 23.

## COUNT III – ELDER AND DEPENDENT ADULT CIVIL PROTECTION ACT

### (As to all Defendants)

57. Plaintiffs incorporate all the foregoing allegations as if fully set forth herein.

58. At all relevant times, Decedent has been an elder as defined by Welfare Institutions Code section 15610.27. He was 91 years of age at the time of Defendants' conduct.

59. The actions described above constitute neglect as defined by Welfare and Institutions Code section 15610.57 in that Defendants recklessly failed to: (1) protect Decedent from health and safety hazards, and (2) ensure that Decedent would be treated with dignity and respect. On information and belief, Defendants and/or their employees also engaged in a cover up to prevent the true facts of what happened to Decedent from being uncovered.

60. Defendants had knowledge that the care plans put in place for Decedent were inadequate to meet her needs, as evidenced by Decedent's falls, fractures, pneumonia and COVID-19.

61. Defendants' neglect of Decedent was not a one-time occurrence. Defendants' neglect was ongoing over the duration of Decedent's residence with Defendants. Decedent suffered falls, fractures, pneumonia and COVID-19.

62. Defendants did not provide needed care to Decedent. Defendants failed to prevent Decedent's falls, fractures, pneumonia and COVID-19.

63. Decedent has been harmed by Defendants' conduct as described herein. Defendants' conduct was a substantial factor in causing Decedent to suffer economic and emotional harm, such as medical expenses, as well as other damages in an amount to be determined according to proof.

64. Defendants acted with recklessness, malice, oppression, and/or fraud. Among other things, Defendants neglected to take the necessary precautions to prevent Decedent's injuries, failed to document and respond to Decedent's injuries and further failed to notify any authorities of the incident. Plaintiffs are thus entitled to punitive damages in an amount to be determined according to proof, as well as attorney's fees and cost pursuant to Welfare and Institutions Code section 15657.5.

## FOURTH CAUSE OF ACTION – WRONGFUL DEATH

### (As to all Defendants)

65. Plaintiffs incorporate all the foregoing allegations as if fully set forth herein.

66. Plaintiff alleges that as a direct result of the foregoing conduct alleged in ¶¶17-30, above, Decedent died on April 27, 2020, depriving his family, including Plaintiff, of the society and companionship, affection, moral support, love, care and comfort he provided, including the ability to share and express love as he provided care to Decedent.

67. Plaintiff also alleges that he suffered funeral and burial expenses, in an amount according to proof at time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment and damages against Defendants as follows:

a. General and special compensatory damages according to proof;

b. Punitive damages according to proof, including treble punitive damages per Civil Code section 3345;

c. For prejudgment and post-judgment interest upon such judgment at the maximum rate provided by law;

d. Reasonable costs of suit;

e. Attorney's fees per Welfare and Institutions Code section 15657; and

f. Such other further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED September 9, 2020.

*/s/ Dawn Smith/*

Dawn M. Smith, Esq.
SMITH CLINESMITH, LLP
325 N. St. Paul St. Suite 2900
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
Attorney for Plaintiffs

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED September 9, 2020.

*[signature]*

Dawn M. Smith, Esq.
SMITH CLINESMITH, LLP
325 N. St. Paul St. Suite 2900
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
Attorney for Plaintiffs

EXHIBIT 1

# CERTIFICATION OF VITAL RECORD

## OFFICE OF VITAL RECORDS
## COUNTY OF TULARE
TULARE, CALIFORNIA

STATE FILE NUMBER: 3052020095688
CERTIFICATE OF DEATH — STATE OF CALIFORNIA
LOCAL REGISTRATION NUMBER: 3202054001076

### DECEDENT'S PERSONAL DATA
1. NAME OF DECEDENT – FIRST (Given): JOSEPH
2. MIDDLE: FRANCIS
3. LAST (Family): GAGLIOLO
4. DATE OF BIRTH: 07/25/1928
5. AGE Yrs: 91
6. SEX: M
9. BIRTH STATE/FOREIGN COUNTRY: NE
10. SOCIAL SECURITY NUMBER: 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
11. EVER IN U.S. ARMED FORCES: NO
12. MARITAL STATUS: DIVORCED
7. DATE OF DEATH: 04/27/2020
8. HOUR (24 Hours): 0525
13. EDUCATION: SOME COLLEGE
14/15. HISPANIC: NO
16. RACE: WHITE
17. USUAL OCCUPATION: MANAGER
18. KIND OF BUSINESS OR INDUSTRY: RETAIL SALES
19. YEARS IN OCCUPATION: 20

### USUAL RESIDENCE
20. DECEDENT'S RESIDENCE: 1925 EAST HOUSTON AVENUE
21. CITY: VISALIA
22. COUNTY/PROVINCE: TULARE
23. ZIP CODE: 93292
24. YEARS IN COUNTY: 10
25. STATE/FOREIGN COUNTRY: CA

### INFORMANT
26. INFORMANT'S NAME, RELATIONSHIP: GARY VICTOR GAGLIOLO, SON
27. INFORMANT'S MAILING ADDRESS: 1250 NORTH TAMARACK STREET, VISALIA, CA 93291

### SPOUSE/SRDP AND PARENT INFORMATION
28. NAME OF SURVIVING SPOUSE/SRDP – FIRST: -
29. MIDDLE: -
30. LAST (BIRTH NAME): -
31. NAME OF FATHER/PARENT – FIRST: ANTHONY
32. MIDDLE: UNKNOWN
33. LAST: GAGLIOLO
34. BIRTH STATE: ITALY
35. NAME OF MOTHER/PARENT – FIRST: NETTIE
36. MIDDLE: UNKNOWN
37. LAST (BIRTH NAME): REZOALI
38. BIRTH STATE: ITALY

### FUNERAL DIRECTOR / LOCAL REGISTRAR
39. DISPOSITION DATE: 05/05/2020
40. PLACE OF FINAL DISPOSITION: RESIDENCE OF GARY VICTOR GAGLIOLO, 1250 NORTH TAMARACK STREET, VISALIA, CA 93291
41. TYPE OF DISPOSITION(S): CR/RES
42. SIGNATURE OF EMBALMER: NOT EMBALMED
44. NAME OF FUNERAL ESTABLISHMENT: TRIDENT SOCIETY
45. LICENSE NUMBER: FD2381
46. SIGNATURE OF LOCAL REGISTRAR: KAREN HAUGHT, MD
47. DATE: 05/04/2020

### PLACE OF DEATH
101. PLACE OF DEATH: REDWOOD SPRINGS HEALTHCARE CENTER
103. IF OTHER THAN HOSPITAL, SPECIFY ONE: Nursing Home/LTC
104. COUNTY: TULARE
105. FACILITY ADDRESS: 1925 EAST HOUSTON AVENUE
106. CITY: VISALIA

### CAUSE OF DEATH
107. CAUSE OF DEATH:
(A) IMMEDIATE CAUSE: CARDIOPULMONARY ARREST — SECS
(B) ACUTE RESPIRATORY FAILURE — MINS
(C) PNEUMONIA — DAYS
(D) COVID-19 — DAYS
108. DEATH REPORTED TO CORONER: YES — 20-4-403-124
109. BIOPSY PERFORMED: NO
110. AUTOPSY PERFORMED: NO
111. USED IN DETERMINING CAUSE: —

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH: CARDIAC ARRHYTHMIA, THALASSEMIA, ANEMIA, DEMENTIA, ATRIAL FIBRILLATION
113. WAS OPERATION PERFORMED: NO

### PHYSICIAN'S CERTIFICATION
114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
115. SIGNATURE AND TITLE OF CERTIFIER: ASHRAF IBRAHIM GHALY M.D.
116. LICENSE NUMBER: A50209
117. DATE: 05/01/2020
(A) Decedent Attended Since: 10/--/2019
(B) Decedent Last Seen Alive: 04/23/2020
118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE: ASHRAF IBRAHIM GHALY M.D., 5418 W. SWEET DRIVE, VISALIA, CA 93291

### CORONER'S USE ONLY
119. MANNER OF DEATH: [blank]
120. INJURED AT WORK: [blank]
121. INJURY DATE: [blank]
122. HOUR: [blank]
123. PLACE OF INJURY: [blank]
124. DESCRIBE HOW INJURY OCCURRED: [blank]
125. LOCATION OF INJURY: [blank]
126. SIGNATURE OF CORONER / DEPUTY CORONER: [blank]
127. DATE: [blank]
128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER: [blank]

STATE REGISTRAR: *010001004524691*

---

CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF TULARE

This is a true and exact reproduction of the document officially registered and placed on file in the VITAL STATISTICS OFFICE, COUNTY OF TULARE HEALTH AND HUMAN SERVICE AGENCY.

DATE ISSUED: MAY 19 2020

Karen Haught, M.D., M.P.H., Tulare County Health Officer
Registrar of Vital Statistics

*000386481*

This copy is not valid unless prepared on an engraved border, displaying date, seal and signature of the County Health Officer.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE