Dawn M. Smith, Esq., SBN 222481
SMITH CLINESMITH, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY GAGLIOLO, individually and as Successor-In-Interest to the ESTATE OF JOSEPH GAGLIOLO,<br><br>                    Plaintiffs,<br><br>vs.<br><br>KAWEAH MANOR INC., d/b/a KAWEAH MANOR CONVALESCENT HOSPITAL; SPRUCE HOLDINGS LLC, d/b/a REDWOOD SPRINGS HEALTHCARE CENTER; AND DOES 1-50,<br><br>Defendants. | Case No.: 1:20-cv-01719-NONE-SAB<br><br>[Removal from Superior Court of California, County of Tulare Case No. VCU284261]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>Date: February 23, 2021<br>Time: 9:30AM<br>Place: Courtroom 4 |

1

2

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 6

   A.      Factual Allegations............................................................................ 6

   B.      The Notice of Removal ..................................................................... 7

II.     BACKGROUND ...................................................................................... 9

   A.      Procedural History and Timeliness of This Motion for Remand ..................... 9

III.    LEGAL STANDARDS FOR REMOVAL AND REMAND ............................... 9

IV.    "FEDERAL OFFICER" REMOVAL IS NOT SUPPORTED ......................... 10

   A.      Defendants were not "Acting Under" the Direction of a Federal Officer...................... 11

   B.      Defendants cannot establish a causal connection between their actions and asserted official duty ........................................................................................ 13

   C.      Defendants did not establish a colorable defense based upon federal law.................... 14

V.      DEFENDANT'S FEDERAL QUESTION GROUND FOR REMOVAL LACKS MERIT. 14

   A.      Plaintiff's Complaint Presents No Federal Question on its face. .................................. 15

   B.      The PREP Act Preempts none of Plaintiff's Claims and cannot serve as a basis for federal jurisdiction. ........................................................................................ 16

   C.      Complete Preemption Does Not Apply in this Case ..................................... 21

VI.    CONCLUSION.......................................................................................... 23

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1 (2003) ........................................................ 11, 23

4

*California v. AbbVie Inc.,* 390 F.Supp.3d 1176 (N.D. Cal. 2019) ....................................... 11, 23

5

*Caterpillar, Inc., v. Williams,* 482 U.S. 386 (1987) .................................................. 10, 15, 16, 23

6

*Davis v. South Carolina,* 107 U.S. 597 (1883) ............................................................................ 12

7

*Fidelitad, Inc. v. Insitu, Inc.,* 904 F.3d 1095 (9th Cir. 2018) ............................................ 9, 12, 13

8

*Franciscan Skemp Healthcare, Inc., v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538

9

F.3d 594 (7th Cir. 2008) ..................................................................................................... 23

10

*Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir. 1992) ....................................................................... 11

11

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka,* 599 F.3d 1102 (9th Cir. 2010)

12

........................................................................................................................................... 11, 23

13

*Jackson v. Big Blue Healthcare, Inc. et al.,* Cause No. 2:20-cv-2259-HLT-JPO, 2020 WL

14

4815099 (D.Kan. Aug. 19, 2020) ........................................................................................ 19

15

*Kehler v. Hood,* Cause No. 4:11-CV-1416-FRB, 2012 WL 1945952 (E.D.MO May 30, 2012)  18,

16

23

17

*Libhart v. Santa Monica Dairy Co.,* 592 F2d 1062 (9th Cir. 1979) .............................................. 10

18

*Marin General Hosp. v. Modesto & Empire Traction,* 581 F.3d 941 (9th Cir. 2009) ............. 11, 23

19

*Martin et al. v. Serrano Post Acute, LLC, et al.,* Cause No. 2:20-cv-05937-DSF-SK, 2020 WL

20

5422949 (C.D.Cal. Sept. 10, 2020) ................................................................................. 19, 20

21

*Maryland v. Soper,* 270 U.S. 9 (1926) ................................................................................... 12, 14

22

*N.G. v. Downey Reg'l Med. Ctr.,* 140 F.Supp.3d 1036 (C.D.Cal 2015) ................................. 11, 13

23

*Panther Brands, LLC, v. Indy Racing League, LLC,* 927 F.3d 586 (7th Cir. 2016) ..................... 12

24

*Parker v. St. Lawrence County. Pub. Health Dep't.,* 102 A.D.3d 140 (N.Y.App.Div. 2012) ...... 18

25

*Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083 (9th Cir. 2009) .............. 23

*Riggs v. Airbus Helicopters, Inc.,* 939 F.3d 981 (9th Cir. 2019) ............................................. 13, 14

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941) ......................................................... 23

*Vaccarino v. Aetna, Inc.,* No. EDCV1802349JGBSHKX, 2018 WL 6249707 (C.D.Cal. Nov. 29, 2018) ............................................................................................................................................ 14

*Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142 (2007) .................................................. 8, 12, 13

**Statutes**

28 U.S.C. § 1331 ......................................................................................................................... 9, 10

28 U.S.C. § 1441 ............................................................................................................................. 10

28 U.S.C. § 1442 ..................................................................................................................... 8, 9, 11

28 U.S.C. § 1447(c) ........................................................................................................................ 10

42 U.S.C. § 247d-6d ............................................................................................................. 9, 17, 22

42 U.S.C. § 247d-6e .......................................................................................................................... 9

Welfare & Inst. C. §15600 ............................................................................................................... 8

**Regulations**

85 Fed. Reg. 52, Section III (Dep't of Health and Human Servs., March 17, 2020) ............. 20, 21

85 Fed. Reg. 52, Section IX (Dep't of Health and Human Servs. March 17, 2020) ................... 18

Cal. Code of Regs. § 72321 ............................................................................................................ 20

Cal. Code of Regs. § 72323 ............................................................................................................ 20

Cal. Code of Regs. § 72523 ............................................................................................................ 20

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE AND NOTICE IS HEREBY GIVEN THAT ON Tuesday, February 22, 2021 at 9:30AM in Courtroom 4 of the above-entitled Court, located at 2500 Tulare Street, 6th Floor, Fresno, California 93721. Plaintiff Gary Gagliolo, individually and as successor in interest to the Estate of Joseph Gagliolo, moves this Court for an Order remanding this action to the Tulare County Superior Court.

Plaintiffs make this motion pursuant to 28 U.S.C. § 1447(c) because this Court lacks federal subject matter jurisdiction.

Defendants justify their removal of this case to federal court by attempting to create federal subject matter jurisdiction in two separate ways. Because each ground claimed as supporting subject matter jurisdiction is lacking merit, this case should be remanded to state court.

This motion is based on this Notice of Motion and Motion to Remand, the accompanying Memorandum of Points and Authorities, the declaration of Dawn M. Smith, the Proposed Order, all records and papers on file in this action, any oral argument, and other evidence that the Court may consider in hearing this motion.

This motion is made following the conference of counsel which took place on December 22, 2020.

Dated January 22, 2021            **SMITH CLINESMITH, PLLC**
                                  By: /s/ Dawn M. Smith
                                      DAWN MARIE SMITH
                                      *Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to 28 U.S.C. § 1447(c), Plaintiff Gary Gagliolo, individually and as successor in interest to the Estate of Joseph Gagliolo ("Plaintiff") requests remand for lack of federal subject matter jurisdiction.

## I.      INTRODUCTION

For just over six months, Joseph Gagliolo was under the care of Spruce Holdings, LLC d/b/a Redwood Springs Healthcare Center, a skilled nursing facility licensed by the State of California. He suffered neglect and at the hands of his caretakers during that eighteen month stay which culminated in his contracting of COVID-19, an illness which he succumbed to on April 27, 2020. Now, despite the litany of injuries described in the Plaintiff's complaint which sound solely and entirely in state court claims, Defendants assert that Mr. Gagliolo' claims for relief arising from COVID-19 diagnosis alone confer jurisdiction on this court. Defendants' notice for removal was improper, and this case in its entirely should be remanded back to state court.

### A.  Factual Allegations

On October 16, 2019, Joseph Gagliolo was admitted to the Redwood Springs Healthcare Center located at 1925 East Houston Ave., Visalia, CA 93292 following a fall during which he suffered a hip fracture. [Exh. 6 at ¶14-15]. During the course of his rehabilitation, Governor Newsom declared a state of emergency on March 4, 2020 to address the then developing coronavirus pandemic. On April 15, 2020, Plaintiff Gary Gagliolo was informed by Redwood Springs that his father had tested positive for COVID-19, but was asymptomatic. [Exh. 6 at ¶16.] During an inspection conducted by the California Department of Public Health that same day, the Department found that the facility was not in compliance with federal regulations mandating the implementation of an infection control policy. [Exh. 7 at p.2]. The Department also found that staff

did not do health screening for visitors or staff at point of entry, and used personal protective equipment was not properly disposed of after use. *Id.* Over the course of the next twelve days, Plaintiff was informed by the staff at Redwood Springs that his father was having breathing problems. [Exh. 6 at ¶17]. Mr. Gagliolo died on April 27, 2020. His cause of death is listed as Cardiopulmonary Arrest, Acute Respiratory Failure, Pneumonia, and COVID-19. [Exh. 6 at ¶18].

**B. <u>The Notice of Removal</u>**

This elder abuse and wrongful death case, which asserts only state law claims, belongs in Superior Court, like any other elder abuse case arising under the Elder and Dependent Adult Civil Protection Act (Welfare & Inst. C. §15600, *et seq*.). Although Plaintiffs allege no federal claims, Defendants improperly attempt to re-cast the complaint as more to their liking, so that they can create federal subject matter jurisdiction where, in reality, none exists.

Defendants' notice of removal is founded on two premises, neither of which supports removal to this court:

First, Defendants removed this case pursuant to 28 U.S.C. § 1442(a)(1) because they claim at all relevant times, that their participation in Medicare and Medicaid repayment systems subjected them to COVID-19 regulation by the United States, and consequently, they were acting under the direction of a federal officer. This assertion is meritless, as the Supreme Court of the United States has held that a private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phase 'acting under' a federal 'official.'" *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 152-53 (2007). Rather, "[f]or a private entity to be acting under a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Fidelitad, Inc. v. Insitu, Inc.,* 904 F.3d 1095, 1099 (9th Cir. 2018). Because Defendants have failed to establish

that they were assisting a federal officer or agency in carrying out the duties or tasks of the federal superior, as well as for other reasons, 28 U.S.C. §1442(a)(1) is inapplicable in this case.

*Second,* Defendants removed this case pursuant to 28 U.S.C. § 1331, claiming that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§247d-6d and 247d-6e (the "PREP Act"), provides them with immunity from suit, an affirmative defense which allegedly confers federal question subject matter jurisdiction on this court. Additionally, per the Defendants' notice of removal, the PREP Act completely pre-empts Plaintiff's state law claims. The well-pleaded complaint rule rebuffs the first assertion, as only the Plaintiff's actual claims (rather than potential defenses) are considered in determining federal subject matter jurisdiction. Further, the PREP Act does not apply because all of Plaintiff's claims causally relate to the Defendants' inactions, rather than anything the Defendants actually did or used; and, Plaintiffs claims causally relate to practices and protocols in place long before the outbreak of COVID-19, rather than the novel use of any drug, product or device (i.e. to "Covered Countermeasures").

The plain language of the PREP act contemplates action—i.e., the administration or use of a drug, product, or device to an individual and injury therefrom. Defendants' Notice of Removal does not even hint that any drug, product, or device was administered or used by Mr. Gagliolo, much less that such administration or use is what caused his injury or death. Plaintiffs similarly do not allege that Mr. Gagliolo was injured by the administration or use of any drug, product or device. To the contrary, Plaintiff's claims are based entirely on Defendant's failure to act, including:

- Failure to implement an effective infection control program;
- Failure to properly train staff;
- Failure to employ adequate staff;
- Failure to identify changes in conditions; and

- Failure to protect Mr. Gagliolo from foreseeable health and safety hazards.

This elder abuse and wrongful death case should never have been removed by the Defendants. Plaintiff requests that it be promptly remanded to the Tulare County Superior Court and, pursuant to 28 U.S.C. §1447(c), requests that the court award necessary expenses, including attorneys' fees, to Plaintiffs incurred as a result of the removal.

## II.   BACKGROUND

### A. Procedural History and Timeliness of This Motion for Remand

On September 11, 2020, Plaintiff commenced this action in the Superior Court of the State of California for the County of Tulare entitled *Gary Gagliolo, Individually and as Successor-in-Interest to the Estate of Joseph Gagliolo, v. Kaweah Manor, Inc., d/b/a Kaweah Manor Convalescent Hospital; Spruce Holdings, LLC, d/b/a Redwood Springs Healthcare Center; and and DOES 1-50.,* Cause No. VCU284261. On December 7, 2020, Defendants removed (or joined in the removal of) this case to Federal Court (See Dkt. #2, hereinafter, "Notice of Removal")

Plaintiff now seeks remand because this Court lacks Subject Matter Jurisdiction over the case. Plaintiff's motion is timely because a motion for remand based on lack of subject matter jurisdiction can be made at any time before a final judgment is entered. *See* 28 U.S.C. § 1447(c).

## III.   LEGAL STANDARDS FOR REMOVAL AND REMAND

The right to remove a case to federal court is a creature of statute. *See Libhart v. Santa Monica Dairy Co.,* 592 F2d 1062, 1064 (9th Cir. 1979). 28 U.S.C. § 1441 allows defendants to remove when a case originally filed in state court presents a federal question. *See* 28 U.S.C. § 1441(a), (b); *see also* 28 U.S.C. § 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); *see Caterpillar, Inc., v. Williams,* 482 U.S. 386, 392 (1987).

The Ninth Circuit strictly construes the removal statute against removal, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). Doubts must be resolved in favor of remanding the case to state court. *California v. AbbVie Inc.,* 390 F.Supp.3d 1176, 1180 (N.D. Cal. 2019); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka,* 599 F.3d 1102, 1107 (9th Cir. 2010).

"As a general rule, absent diversity jurisdiction, a case will not be removeable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). Generally, "preemption" is an affirmative defense to a state law claim and its assertion by the defendant is insufficient to invoke federal question jurisdiction. *See Marin General Hosp. v. Modesto & Empire Traction,* 581 F.3d 941, 945 (9th Cir. 2009).

IV.  <u>**"FEDERAL OFFICER" REMOVAL IS NOT SUPPORTED**</u>

28 U.S.C. § 1442(a)(1) authorizes any officer of the United States who is sued in an official or individual capacity to remove the action to federal court based on the assertion of a federal defense. 28 U.S.C. § 1442(a)(1) states that an action against or directed to the following may be removed:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in a official or individual capacity, for or relating to any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

This is an exception to the well pleaded complaint rule, which typically requires a federal question to be placed in the complaint for the court to have proper subject matter jurisdiction based on a federal question. *See N.G. v. Downey Reg'l Med. Ctr.,* 140 F.Supp.3d 1036, 1039 (C.D.Cal 2015). Removal is appropriate under § 1442(a)(1), when the removing defendant establishes they were

acting under the direction of a federal officer when they engaged in the tortious conduct, there is a causal nexus between the plaintiff's claims and the defendant's actions under federal direction, and the defendants have raised a colorable defense based upon federal law. *Fidelitad, Inc. v. Insitu, Inc.,* 904 F.3d 1095, 1099 (9th Cir. 2018). Removal is improper because the defendants simply do not satisfy the elements for removal under § 1442(a)(1).

### A. Defendants were not "Acting Under" the Direction of a Federal Officer

"For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Fidelitad, Inc.,* 904 F.3d at 1099 (9th Cir. 2018)(quoting *Goncalves,* 865 F.3d at 1245). The "relationship typically involves 'subjection, guidance, or control. *Watson,* 551 U.S. at 151. *See e.g. Maryland v. Soper,* 270 U.S. 9, 30 (1926)(a private party acting as a federal officers' driver in a distillery raid had the "same right to the benefit of" the removal provision as the federal agents); *Davis v. South Carolina,* 107 U.S. 597, 600 (1883) (a soldier who killed a distiller during a raid could remove his criminal case because he "lawfully assist[ed]" a revenue officer "in the performance of his official duty."

In *Panther Brands, LLC, v. Indy Racing League, LLC,* 927 F.3d 586, 590 (7th Cir. 2016), the Seventh Circuit puts the early distillery raid cases in context, noting that "[t]here are indeed cases supporting…removal where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." The Court continued, "merely being subject to federal regulations or performing some functions that a government agency controls is not enough to transform a private entity into a federal officer." *Id.*

Here, defendants insist they "were acting at the specific direction and oversight of the federal government" to address the COVID-19 pandemic. However, they fall far short of

demonstrating that they were transformed into federal officers or were standing in the shoes of federal officers.

The arguments raised by the Defendants are variations of arguments advanced by nursing homes which have failed in the past. Specifically, long-term care facilities (and their owners) accept regulation under Medicare in exchange for receiving Medicare and Medicaid funds, but this relationship has never been enough to satisfy the "acting under" test for "federal officer" jurisdiction. In *N.G. v. Downey Regional Medical Center,* 140 F. Supp. 3d 1036, 1038 (C.D.Cal 2015), the plaintiff filed a negligence claim in state court and the defendant removed to federal court alleging federal officer removal under 28 U.S.C. § 1442(a)(1). *Id.* The defendant alleged that it provided healthcare to people who receive Medicare or Medicaid. *Id.* In rejecting removal, the court noted that if it accepted the defendant's argument, every private medical entity providing medical services…for Medicare, or Medicaid recipients would be acting under a federal officer for the purposes of § 1442(a)(1)." *Id.* at 1040. The *N.G.* court went on to say this would allow "every medical malpractice claim filed against such entities that arises under state law [to] be removed to federal court." *Id.* The court held that simply complying with utilization and professional protocols decided on by federally designated Quality Improvement Organizations" falls short of establishing that the federal government directed and controlled the defendant. *Id. at* 1041. In so ruling, the Court relied heavily on *Watson v. Philip Morris,* 551 U.S. 142, 153 (2007), which held that:

> "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries."

Simply complying with the law does not bring a private actor within the scope of the federal officer removal statute. *See Fidelitad, Inc.,* 904 F.3d at 100 (*citing Watson,* 551 U.S. at 152); *see also Riggs v. Airbus Helicopters, Inc.,* 939 F.3d 981, 985 (9th Cir. 2019), *cert. denied,* NO. 19-1158, 2020 WL 3492671 (U.S. June 29, 2020); *Vaccarino v. Aetna, Inc.,* No. EDCV1802349JGBSHKX, 2018 WL 6249707 at *5 (C.D.Cal. Nov. 29, 2018).

Here, defendants at best articulate that the federal government was issuing guidelines. Defendants were not working alongside or at the express direction of any federal officer; on the contrary, they were complying with reimbursement guidelines to continue to receive payment from the United States government as purely independent contractors. Defendants' arguments grossly overreach, suggesting that all nursing home employees have been effectively "deputized" as federal agents.

The notice of removal does not establish that defendants were acting under the direction of a federal officer. The federal agencies were simply issuing guidance for compliance with regulations and statutes. Defendants' excerpts from those guidelines omit that CMS 'COVID-19 Long Term Care Facility guidance was and is "recommended," not mandated. (*see id)* There is simply no support for Defendants' contentions that they were acting as federal agents, and to conclude as much here would grossly expand the federal officer statute to include just about anyone who contracts with or is highly regulated by the Federal Government.

**B. Defendants cannot establish a causal connection between their actions and asserted official duty**

Past cases have interpreted the 'color of office' test to require a showing of a causal connection between the charged conduct and asserted authority. *Maryland (No. 1),* 270 U.S. at 33. "It is enough that (petitioners') acts or (their) presence at the place in performance of (their) official duty constitute the basis, though mistaken or false, of the state prosecution." *Id.* A private party is acting under color of the office of a federal agency or official, as the basis for federal officer removal of

an action, if it is "involved in a effort to assist, or to help carry out, the duties or tasks of the federal superior." *Riggs,* 939 F.3d at 985 (9th Cir. 2019) (quoting *Fidelitad, Inc.,* 904 F.3d at 1099).

Here, the Plaintiff's complaint alleges a wholesale failure to comply with certain state and federal guidance. Plaintiff's complaint alleges deficiencies in infection control, the use of PPE by facility staff, and COVID-19 testing, all of which amount to a significant deviation from compliance with the guidance attached to the Defendant's notice of removal. Defendants cannot have it both ways: They cannot claim that their alleged inaction is protected by guidance that they allege requires action. Indeed, the hallmark of federal officer jurisdiction is that the Defendants actual take some action, rather than no action at all, at the behest of a federal officer. *See Riggs,* 939 F.3d at 985. Furthermore, nothing the defendant points to in their notice of removal could be suggested to be an action taken at the behest of a federal officer that **<u>causally</u>** connects with the alleged failures to act.

## C. <u>Defendants did not establish a colorable defense based upon federal law</u>

Moreover, Defendants' wholesale failure to act does not implicate the PREP Act, 42 U.S.C. §§ 247d-6d(a)(1), 247d-6e for purposes of the final prong of this analysis for the following reasons:

- Plaintiff's claims do not fall within the scope of the PREP Act;
- Plaintiff's does not allege claims related to a "Recommended Activity" such that the PREP Act is not implicated;
- Plaintiffs do not allege claims based on the use by or administration to Mr. Gagliolo of any "covered countermeasure";
- Defendants are not "program planners" nor "qualified persons under the PREP Act;

Consequently, the PREP Act does not apply, is not a colorable defense based upon federal law, and therefore should not serve as a basis for jurisdiction.

## V. <u>DEFENDANT'S FEDERAL QUESTION GROUND FOR REMOVAL LACKS MERIT.</u>

### A.  **Plaintiff's Complaint Presents No Federal Question on its face.**

It is hornbook law that federal question jurisdiction **must** be based **solely** on the claims made by the plaintiff in the complaint and the defendant **cannot** "create" federal question jurisdiction by invoking a federal statute as an affirmative defense. *Caterpillar, Inc.*, 482 U.S. at 493 (*citing inter alia, Merrill Dow Pharm, Inc. v. Thompson,* 478 U.S. 804, 808 (1986); *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112-113 (1936)). In *Caterpillar,* the Supreme Court of the United States succinctly restated the "century-old jurisdictional framework governing removal of federal question cases":

> **Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant**…the presence or absence of federal-question jurisdiction is governed by the "well pleaded complaint rule," which provides that **federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint…The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law**.

> Ordinarily federal preemption is raised as a defense to the allegations in a plaintiff's complaint. Before 1887, a federal defense such as pre-emption could provide a basis for removal, but, in that year, Congress amended the removal statute. We interpret that amendment to authorize removal only where original federal jurisdiction exists…Thus, **it is now settled law that a case may not be removed to federal court on the basis of a federal defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue**.

*Caterpillar, Inc.,* 482 U.S. at 392-93 (citations omitted)(emphasis added).

Here, there is no dispute that the claims asserted in Plaintiff's Complaint are purely state law claims and no federal question is raised by the Complaint. Defendants' sole basis for claiming federal question jurisdiction is that the PREP Act preempts the state law claims and provides them with immunity from those claims. Because the PREP Act does not completely preempt the state law claims raised by Plaintiff, removal was not warranted in the first place and this case should be remanded back to the California District Court.

B. **The PREP Act Preempts none of Plaintiff's Claims and cannot serve as a basis for federal jurisdiction.**

1. **Plaintiffs Claims do not fall within the scope of the PREP Act**

The PREP Act was enacted in 2005 to protect vaccine manufacturers from financial risk in the event of a declared public health emergency. The immunity applies to manufacturers, distributors, and administrators as well as other "qualified persons" who prescribe, administer, or dispense covered countermeasures, which include vaccines, antidotes, medications, medical devices, or other items used to mitigate a pandemic. 42 U.S.C. § 247d-6d(i)(1)(A). Congress recently amended the PREP Act to include personal respiratory devices (masks) that are approved by the Federal Food, Drug, and Cosmetic Act, or the National Institute for Occupational Safety and Health Act. Lastly, Congress engaged legislation to provide compensation to people subsequently injured by covered countermeasures. This is known as the Countermeasures Injury Compensation Program.

If the PREP Act does not apply to the allegations contained in the Complaint, it cannot serve as the basis for removal. In determining the applicability of the PREP Act, the Court must look to the plain meaning of the language used in the statute. The very language of the PREP Act denotes action taken, while Plaintiff's allegations are that the Defendants wholesale failed to act. The statute is clear in that it applies to injuries caused by "the administration to or the use by an individual of a covered counter measure…" 42 U.S.C. § 247d-6d(a)(1). Indeed the act and the immunity provided by it make clear that the covered countermeasure must actually cause the injury described in the Plaintiff's complaint:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss **caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a Covered Countermeasure** if a declaration under subsection (b) of this section has been issued with respect to such countermeasure…

> The immunity…applies to any claim for loss **that has a causal relationship with the administration to or use by** an individual of a Covered Countermeasure,

including **a causal relationship** with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

42 U.S.C. § 247d-6d(a)(1), (a)(2)(B)(emphasis added).

Thus, the scope of the immunity, by the specific language of the statute, is limited to circumstances in which a covered countermeasures' (1) use or administration by an individual (2) causes injury to a Plaintiff. *Id.* Although the PREP Act itself does not define the term "administered to," the Secretary of the Department of Health and Human Services specifically defined that term in the March 17, 2020, declaration as the "physical provision of the countermeasures to recipients…" *See* 85 Fed. Reg. 52, Section IX (Dep't of Health and Human Servs. March 17, 2020)).

The specific question of what constitutes "administration" or "use" of a "Covered Countermeasure" prior to the current national pandemic was discussed in few cases. All of those courts have resolved the question of whether the PREP Act applied based on whether the allegations of defendants' wrongdoing arose from the physical provision of a vaccine to the plaintiff. If the state court claims arose from the actual physical provision of a covered countermeasure that in turn caused injury to a party, the PREP Act applied. *See Parker v. St. Lawrence County. Pub. Health Dep't.,* 102 A.D.3d 140 (N.Y.App.Div. 2012). If the state court claims arose out of a failure to act or a failure to administer a covered countermeasure when one was available, the PREP Act did not apply. *See Kehler v. Hood,* Cause No. 4:11-CV-1416-FRB, 2012 WL 1945952 at *3 (E.D.MO May 30, 2012).

In *Parker v. St. Lawrence County Public Health Department,* a grade school, related to a government sanctioned and qualified vaccination program administered the H1N1 vaccine to a kindergarten student without parental consent. *Parker v. St. Lawrence County. Pub. Health Dep't.,* 102 A.D.3d 140 (N.Y.App.Div. 2012). Although the parents brought a state law claim for battery,

the New York Supreme Court found that the PREP Act applied to preempt state law claims and confer immunity on the school because the PREP Act applies to the dispensing and administration of "Covered Countermeasures," including vaccines.

In contrast, in *Kehler v. Hood,* Cause No. 4:11-CV-1416-FRB, 2012 WL 1945952 at *3 (E.D.MO May 30, 2012). the United States District Court for the Eastern District of Missouri remanded a plaintiff's suit based on lack of informed consent back to the State Courts. The Court there reasoned that the claim for relief, the failure to obtain informed consent, "occurred prior to the administration of the H1N1 vaccine." *Id at 4.* Because the alleged wrongdoing did not arise out of the physical act of providing the vaccine, the PREP Act was not applicable, and Plaintiff's claims did not arise under federal law.

Since the onset of the pandemic, this issue has been addressed by federal courts across the country and each of them has reached the same result: Remand is appropriate. *See Jackson v. Big Blue Healthcare, Inc. et al.,* Cause No. 2:20-cv-2259-HLT-JPO, 2020 WL 4815099 (D.Kan. Aug. 19, 2020); *Martin et al. v. Serrano Post Acute, LLC, et al.,* Cause No. 2:20-cv-05937-DSF-SK, 2020 WL 5422949 (C.D.Cal. Sept. 10, 2020)(appeal filed Oct. 19, 2020).

In *Jackson,* the district court addressed an argument where the underlying removal was predicated on PREP Act Preemption. *Jackson v. Big Blue Healthcare, Inc. et al.,* 2020 WL 4815099 at *3-6. The District Court found that while the defendants correctly stated the law—that the PREP Act applies to injuries "arising out of, relating to, or resulting from" the administration or use of covered countermeasures—the operative complaint in no way alleged that any "injury or claim of loss was caused by the administration or use of any covered countermeasure, let alone that the loss arose out of, related to, or resulted from the same." *Id. at *6.*

The United States District Court for the Central District of California in *Martin* went a step further, rejecting identical arguments for preemption as those advanced by the Defendants in their Motion for Remand. The court explained:

> "It is largely irrelevant that federal courts have exclusive jurisdiction under the PREP Act because none of the claims in the complaint, on its face, are brought under that Act. If Defendants believe that some or all of Plaintiffs' state law claims are barred by the PREP Act, the appropriate response is to file a demurrer in state court. If the State Court dismisses the state law claims, Plaintiffs could then decide if they wish to file claims under the PREP Act in the District of the District of Columbia, the court with exclusive jurisdiction over such claims…Otherwise, the Court declines to find that Congress has completely occupied the field of actions or inactions related to COVID-19 spread and treatment to such a degree that all state law claims to that topic are subject to removal."

> *Martin et al. v. Serrano Post Acute, LLC, et al.,* Cause No. 2:20-cv-05937-DSF-SK, 2020 WL 5422949 (C.D.Cal. Sept. 10, 2020) (appeal filed Oct. 19, 2020).

Here, as in both *Jackson* and *Martin,* the wrongdoing Plaintiff alleges is the Defendants' failure to act—in particular, the failure to take reasonable steps to prevent the introduction and spread of the COVID-19 virus in Defendants' facility. Plaintiff does not assert any theory of liability that is in any way related to the Defendants' "physical provision" of anything, be it drug, device, or other "countermeasure." Rather, Plaintiff's claims are based on Defendants' failure to implement and execute an effective infection control program that included proper training of employees, screening of employees for symptoms of COVID-19 before they were allowed to enter the facility, separating residents suspected of having infection from non-infected residents, enforcing social distancing protocols, and much more pursuant to state law. *See* Cal. Code of Regs. §§ 72321; 72323; 72523(c)(3). Plaintiffs make no allegations that the Defendants' use or administration of masks, social distancing requirements, or other "covered countermeasure" caused injury to Mr. Gagliolo; rather, the allegations are grounded entirely in the Defendants' failure to act. Consequently, the claims cannot fall within the defined scope of the PREP Act. If the PREP Act does not apply to the case it cannot serve as the basis for federal question jurisdiction under 28 U.S.C. §1331.

**2. Plaintiffs do not allege claims related to a Recommended Activity and therefore the PREP Act is not implicated.**

The Secretary's March 17, 2020 declaration sets forth the "Recommended Activities" to which immunity would apply under the PREP Act as, "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures." *See* 85 Fed. Reg. 52, Section III (Dep't of Health and Human Servs., March 17, 2020). In the declaration, the Secretary further defines the term "administration" to mean "physical provision of a countermeasure to a recipient…" *Id. at Section IX.*

Here, the Plaintiffs allegations have nothing to do with the affirmative administration or provision of anything to the Plaintiff's decedent. Plaintiff's case is similar to other recent district court decisions to remand wherein appropriate countermeasures were **not** undertaken to protect a Plaintiff's decedent.

**3. Plaintiffs do not allege claims based on the use of "Covered Countermeasures" and therefore the PREP Act is not implicated.**

To qualify for immunity under the PREP Act, Plaintiffs' claims must be related to the Defendants' use of a Covered Countermeasure. The Secretary's March 17, 2020, declaration relative to COVID-19 limited the "Covered Countermeasures" to "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine used to treat, diagnose, cure, prevent, or mitigate COVID-19 or the transmission of SARS-CoV-2…or any device used in the administration of such a product. *See* 85 Fed. Reg. 52, Section III (Dep't of Health and Human Servs., March 17, 2020). Thus, "covered countermeasures" are products. They are tangible things. They are primarily drugs and the products used to provide those drugs to patients. They are not policies, procedures, protocols, guidelines, or recommendations.

The Department of Health and Human Services has published a list of all the "countermeasures" covered under the Secretary's declaration. The list of all of the "therapeutics" included as covered countermeasures is attached as Exhibit 3 to the Smith Declaration. The list of

all the medical devices included as covered countermeasures" is attached as Exhibit 4 to the Smith Declaration. Of note, all of the items listed in Exhibit 3 and 4 are drugs or other physical products. Of further note, there is not a single policy, procedure, protocol, guideline, or recommendation listed. Specifically, "screening employees before allowing them to enter the facility is not listed as a covered countermeasure. Neither is "social distancing" or "discontinuing group activities." Nowhere in Plaintiff's complaint is the use or administration of a "covered countermeasure alleged." The PREP Act simply cannot apply here.

Defendants mention "countermeasures" in their Notice of Removal, but do not and could not allege that the term includes "inaction" Defendants' Notice of Removal claims that respirators, face shields, and respiratory protective devices fall under the Prep Act, but do not point to any place in the Plaintiff's Complaint where the Plaintiff alleged that these items caused injury to Mr. Gagliolo (Exh. 6, *generally*). This is fatal to their removal of this case, as the pleading simply does not implicate the PREP Act.

**4. Defendants are not "program planners" nor "qualified persons" under the PREP Act.**
Defendants state in their Notice of Removal that they were "covered persons," "program planners," and/or "qualified persons" at all times set forth in the Complaint. This is incorrect. Plaintiffs are not claiming Defendants were administering a covered countermeasure, and therefore, for purposes of this complaint, the Defendants cannot fall within the definition of a "covered person," "program planner," or "qualified person" regarding this lawsuit. *See* 42 U.S.C. § 247d-6d(a)(1), (2)(B), (i)(2), (i)(6), (i)(8).

**C. Complete Preemption Does Not Apply in this Case**
Defendants' notice of removal argues that this case comes under a very narrow exception to the "well-pleaded complaint rule" that provides for federal court jurisdiction in cases of "complete preemption. However, to make their argument, Defendants mischaracterize the

allegations in the Complaint to recase the Plaintiffs' state court claims as claims under the PREP Act

Because the PREP Act does not apply, the Court need not reach the question of preemption. The question of whether the PREP Act completely preempts any state law claims Plaintiffs could assert begins with the threshold questions of whether the PREP Act even applies to the allegations in Plaintiff's Complaint. If the PREP Act does not apply, the inquiry ends—the question of complete preemption is rendered moot, and remand is required.

## 1. General Rules of Federal Question Jurisdiction favor remanding the case to State Court.

The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter. *Provincial Gov't of Marinduque v. Placer Dome, Inc.,* 582 F.3d 1083, 1087 (9th Cir. 2009). Any doubts concerning removability must be resolved in favor of remanding the case to state court. *California v. AbbVie, Inc.,* 390 F. Supp. 3d 1176, 1180 (N.D.Cal 2019); *Geographic Expeditions, Inc., v. Estate of Lhotka ex rel. Lhotka,* 599 F.3d 1102, 1107 (9th Cir. 2010). In determining whether a claim arises under federal law, courts must be mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank,* 539 U.S. at 6. Generally, "preemption" is an affirmative defense to a state law claim and a defendant's assertion of it is insufficient to invoke federal question jurisdiction. *See Marin General Hosp.,* 581 F.3d at 941; *Caterpillar,* 482 U.S. at 392-93.

## 2. "Complete Preemption" is not implicated by this case.

Even if the PREP Act applied to this case, "[t]he doctrine of *complete* preemption, a narrow exception to the [well-pleaded complaint rule] is not implicated here." *Kehler v. Hood,* Cause No. 4:11-CV-1416-FRB, 2012 WL 1945952 at *3 (E.D.MO May 30, 2012). By its clear and explicit language, its scope is not "so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc., v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir. 2008) emphasis added). Rather, the PREP Act's express language is specifically limited to a very narrow set of activities involving a specific list of products and in no way supplants Plaintiffs' state common law claims for negligence in failing to act to prevent the entry and spread of COVID-19 in its facility.

## VI.   <u>CONCLUSION</u>

Plaintiff's Complaint alleges the Defendants' wholesale failures to protect a vulnerable healthcare resident from exposure to the COVID-19 virus not as the result of any product used or not used by the Defendants, but by the Defendants' wholesale failure to implement infection control policies in advance of the epidemic as required by the State of California and the Centers for Medicare and Medicaid. Receiving funds from the Centers for Medicare and Medicaid in exchange for following federal nursing home guidelines is insufficient to transform the Defendant into a federal officer. Furthermore, the PREP Act simply does not speak to this type of **inaction** alleged here. Consequently, there was no ground for removal such that remand to the Superior Courts of California is appropriate.

RESPECTFULLY SUBMITTED January 23, 2021.


_____
Dawn M. Smith, Esq.
SMITH CLINESMITH, LLP
325 N. St. Paul St. Suite 2900
Dallas, TX 75201

Telephone: (214) 953-1900
Facsimile: (214) 953-1901
dawn@smithclinesmith.com
Attorney for Plaintiffs

*Gary Gagliolo, Individually and as SII to the Estate of Joseph Gagliolo v. Kaweah Manor, inc., d/b/a Kaweah Manor Convalescent Hospital, et al.*

**United States District Court**
**Eastern District of California**
**Cause No. 1:20-cv-01719-NONE-SAB**

**PROOF OF SERVICE**

I am employed in Dallas County, Texas. I am over the age of 18 and am not a party to this action. My business address is 325 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

On **January 22, 2021,** I served the foregoing documents, described in this action as:

- **PLAINTIFF'S MOTION FOR REMAND, DECLARATION, and EXHIBITS** as follows:

William C. Wilson, SBN: 149683
bwilson@wilsongety.com
Kim S. Cruz, SBN: 177406
kcruz@wilsongety.com
Ryan G. Canavan, SBN: 313990
rcanavan@wilsongetty.com
WILSON GETTY LLP
12555 High Bluff Drive, Suite 270
San Diego, California 92130
Telephone: 858.847.3237
Facsimile: 858.847.3365

**[X] By CM/ECF ELECTRONIC DELIVERY** in accordance with the registered case participants and in accordance with the procedures set forth at the Court's website, http://www.caed.uscourts.gov/caednew/index.cfm/cmecf-e-filing

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California and the State of Texas that the above is true and correct.

Executed on **January 22, 2021** at Dallas, Texas

_____
Paul Downey

NOTICE OF MOTION AND MOTION TO REMAND                                          25
Case No. 1:20-cv-01719-NONE-SAB