1   William C. Wilson, SBN: 149683
    bwilson@wilsongetty.com
2   Kim S. Cruz, SBN: 177406
    kcruz@wilsongetty.com
3   Ryan G. Canavan, SBN: 313990
    rcanaveh@wilsongetty.com
4   WILSON GETTY LLP
5   12555 High Bluff Drive, Suite 270
    San Diego, California 92130
6   Telephone:    858.847.3237
    Facsimile:    858.847.3365
7   Attorneys for Defendant SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE
8   CENTER

9

10                      **UNITED STATES DISTRICT COURT**

11                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12  | GARY GAGLIOLO, individually and as | Case No. 1:20-cv-01719-NONE-SAB |

GARY GAGLIOLO, individually and as
Successor-In-Interest to the ESTATE OF
JOSEPH GAGLIOLO,

                    Plaintiffs,

vs.

KAWEAH MANOR INC., d/b/a KAWEAH
MANOR CONVALESCENT HOSPITAL;
SPRUCE HOLDINGS LLC, d/b/a REDWOOD
SPRINGS HEALTHCARE CENTER; AND
DOES 1-50,

                    Defendants.

Case No. 1:20-cv-01719-NONE-SAB

[Removal from Superior Court of California, County of Tulare Case No. VCU284261]

Action Filed: September 11, 2020

**SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f)); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KIM S. CRUZ IN SUPPORT THEREOF, AND [PROPOSED] ORDER THEREON**

Hearing Date:  March 3, 2021
Hearing Time: 10:00 a.m.
Courtroom: 9

23  **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

24          PLEASE TAKE NOTICE that on March 3, 2021 at 10:00 a.m. or as soon thereafter as the matter

25  may be heard in Courtroom   of the above entitled court, located at 2500 Tulare Street, 6th floor, Fresno,

26  California   93721,      Defendant,   SPRUCE   HOLDINGS,   LLC   dba   REDWOOD   SPRINGS

27

28

---

**SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f))**
**Case No. 1:20-cv-01719-NONE-ASB**

HEALTHCARE CENTER, will and hereby does move the Court for a dismissal from Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

(1)   As to the First Cause of Action for Negligence Second Cause of Action for Willful Misconduct, Third Cause of Action for Violations of the Elder and Dependent Adult Protection Act (California *Welfare and Institutions Code* § 15600, et seq.); and Fourth Cause of Action for Wrongful Death, Plaintiff fails to state a claim against Defendant as Defendant has immunity with respect to such claims under the Public Readiness and Emergency Preparedness Act ("PREP Act") and Declarations of Health and Human Services Secretary Alex Azar invoking the Act for the COVID-19 pandemic.  Pursuant to Federal Rules of Civil Procedure, Rule (12)(6), Defendant requests this Court issue an Order of Dismissal.

(2) As to the First Cause of Action for Negligence Second Cause of Action for Willful Misconduct, Third Cause of Action for Violations of the Elder and Dependent Adult Protection Act (California *Welfare and Institutions Code* § 15600, et seq.); and Fourth Cause of Action for Wrongful Death, Plaintiff fails to state a claim against Defendant  pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) on the grounds that the sole exception to the PREP Act immunity from suit and liability (other than actions by and against the United States), is "for an exclusive Federal cause of action against a covered person for death or serious injury proximately caused by willful misconduct" which must be filed in the United States District Court for the District of Columbia.  42 U.S.C. §§247d-6d(d)(1) and (e)(1). Defendant requests this Court issue an Order of dismissal;

(3)     As to the First Cause of Action for Negligence, Plaintiff fails to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant requests this Court issue an Order of dismissal;

(4)     As to the Second Cause of Action for Willful Misconduct, pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Plaintiff fails to state facts sufficient to state a claim upon which relief may be granted under California Law. Defendant requests this Court issue an Order of dismissal;

(5)     As to the Second Cause of Action for Willful Misconduct, pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Plaintiff fails to state facts sufficient to state a claim for relief under the PREP Act. Defendant requests this Court issue an Order of dismissal;

(6)     As to the Second Cause of Action for Willful Misconduct, such action must be filed in the United States District Court for the District of Columbia.  Defendant requests this Court issue an Order of dismissal;

(7)     As to the Third Cause of Action for Violations of the Elder and Dependent Adult Protection Act (California *Welfare and Institutions Code* § 15600, et seq.), Plaintiff fails to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant requests this Court issue an Order of dismissal; and

(8)     As to the Fourth Cause of Action for Wrongful Death, Plaintiff fails to state facts sufficient to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6), Defendant request this Court issue an Order of dismissal.

For these reasons collectively, as well as separately and independently, Defendant, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER, should be dismissed from Plaintiffs' First Amended Complaint.

Moreover, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendant, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER, will and hereby does move the Court for order striking out the prayers for relief that are not available as a matter of law from Plaintiff's Complaint.   Specifically, Defendant hereby moves the Court for an Order striking the following portions of Plaintiff's Complaint:

(1)     Pg. 15, lines 14-15, at Paragraph 64: ". . . .Plaintiffs are thus entitled to punitive damages in an amount to be determined according to proof, . . ."

(2)     Pg. 15, lines 15-16, at Paragraph 64: ". . . as well as attorney's fees and cost pursuant to Welfare and Institutions Code section 15657.5."

(3)     Pg. 16, lines 6-7, Prayer for Relief: "b. Punitive damages according to proof, including treble punitive damages per Civil Code section 3345."; and

(4)     Pg. 16, line 12, Prayer for Relief: "e. Attorney's fees per Welfare and Institutions Code section 15657."

This Court has original jurisdiction pursuant to 28 USC §§ 1131 and 1442(a) and which may be removed to this court pursuant to 28 USC §§1441 and 1446 based on federal question and federal

1  officer jurisdiction.  (See Defendant's Notice of Removal and exhibits thereto filed with this Court on

2  December 7, 2020- Dkt-2.)

3       This motion is made following communication with Plaintiff's counsel pursuant to this Court's

4  standing orders and as set forth in more detail in the Declarations of Ryan Canavan and Kim Cruz, and

5  Exhibits "GG" through "II" thereto, filed concurrently herewith.

6       This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

7  Authorities, the Declarations of Kim Cruz, Esq. and Ryan Canavan, Esq. and exhibits thereto filed

8  concurrently herewith, the concurrently filed Request for Judicial Notice and exhibits attached thereto,

9  and any reply brief submitted by Defendant.

10       Lastly, this motion is based upon the pleadings filed herein, and any other such oral and/or

11  documentary evidence or argument which may be presented at, before, or during the hearing on this

12  motion.

13  Dated:  February 1, 2021         WILSON GETTY LLP

14

15

16           By:   /s/ Kim S. Cruz             

17            William C. Wilson
          Kim S. Cruz
          Ryan G. Canavan

18           Attorneys for Defendant SPRUCE HOLDINGS, LLC dba

19           REDWOOD SPRINGS HEALTHCARE CENTER

20

21

22

23

24

25

26

27

28

**SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND
MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f))
Case No. 1:20-cv-01719-NONE-ASB**

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................................1

TABLE OF AUTHORITIES ......................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

    I.      INTRODUCTION ..................................................................................1

    II.    LEGAL STANDARD ............................................................................2

    III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE IMMUNITY AFFORDED TO DEFENDANT UNDER THE PREP ACT..............................4

         A.    The PREP Act Generally and Authority of the HHS Secretary...........5

         B.    The Declarations of the HHS Secretary invoking the PREP Act.........6

         C.    The PREP Act Applies to the Allegations in the Complaint ...............7

         D.    Redwood Springs is a "Covered Person and Program Planner" as defined under the PREP Act .................................................................13

    IV.   PLAINTIFF'S REMEDY FOR THE CLAIMS RELATING TO COVERED COUNTERMEASURES IS TO FILE A CLAIM UNDER 42 U.S.C.  §247d-6e............14

         PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION FOR.........................15

    V.    NEGLIGENCE .....................................................................................15

    VI.   WILLFUL MISCONDUCT IS NOT A RECOGNIZED TORT UNDER CALIFORNIA LAW AND PLAINTIFF HAS FAILED TO STATE A WILLFUL MISCONDUCT CLAIM UNDER THE PREP ACT ......................................................16

         A.    Willful Misconduct is not a Recognized Tort under California Law...................16

         B.    Plaintiff Has Failed to State a Willful Misconduct Claim under the PREP Act ....................................................................................................16

    VII.  PLAINTIFF'S ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW ..............................................................17

    VIII. PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ..............................22

    IX.   PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT THE CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES...................22

    X.    PLAINTIFF IS NOT ENTITLED TO TREBLE DAMAGES UNDER  CIVIL CODE SECTION 3345 .................................................................24

    XI.   CONCLUSION ....................................................................................25

1

## TABLE OF AUTHORITIES

2

### CASES

3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 173 L. Ed.2d 868, 883 (2008) ...............3, 20

4   *Auer v. Robbins*, 519 U.S. 452, 461 (1997) .............................................................................................5

5   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct., 1955, 1965, 167 L. Ed. 2d 929 (2007) ............3, 20

6   *Bell v. Hood*, 327 U.S. 678, 682-83 (1946) .............................................................................................3

7   *Berkley v. Dowds* (2007) 152 Cal.App.4th 518 .....................................................................................16

8   *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 507......................................................15

9   *Carter v. Prime Healthcare Paradise Valley, LLC*. (2011) 198 Cal.App.4th 396, 407 ........................19

10  *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984) ............5, 7

11  *Clark v. Superior Court* (2010) 50 Cal.4th 605 .....................................................................................24

12  *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771 ................................................18, 19, 20

13  *De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978).........................................................................3

14  *Delaney v. Baker* (1999) 20 Cal.4th 23.........................................................................................19, 20

15  *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).........................................................................4

16  *Mack v. Soung* (2000) 80 Cal.App.4th 966 ...........................................................................................19

17  *Moran v. Peralta Comty. Coll. Dist.*,825 F. Supp. 891, 894-95 (N.D. Cal. 1993) ....................................4

18  *Nogart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390..................................................................................22

19  *Parker v. St. Lawrence County Public Health Department,* 102 A.D.3d 140 (N.Y. App.Div. 201 .........12

20  *SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-727 (C.D. Cal.1995)........................................3

21  *Strigliabotti v. Franklin Resources, Inc.*,398 F. Supp. 2d. 1094, 1097 (N.D. Cal. 2005)..........................4

22  *Susilo v. Wells Fargo Bank, N.A.*, 796 F.Supp. 2d 1177, 1196 (C.D. CA 2011)........................................4

23  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). ...........................................4

24  *U.S. ex rel. Modglin v. DJO Global Inc.* (2014 C.D. CA) 48 F.Supp.3d 1362, 1370 ...............................4

25  *Zinerman v. Burch*, 494 U.S. 113, 118 (1990).........................................................................................3

26

### STATUTES

27  42 U.S.C. § 247d-6d(b)(7) ....................................................................................................................5

28  42 U.S.C. §§247d-6d(d)(1) and (e)(1) ..............................................................................2, 14, 17, 18

SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND
MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f))
Case No. 1:20-cv-01719-NONE-ASB

42 U.S.C. §247d-6d (c)(3) ...................................................................................................17

42 U.S.C. §247d-6d (e)(3) ...................................................................................................17

42 U.S.C. §247d-6d (i)(2) and (5) .......................................................................................13

42 U.S.C. §247d-6d (i)(6) ....................................................................................................13

42 U.S.C. §247d-6d(a)(1) .......................................................................................................5

42 U.S.C. §247d-6d(c)(1)(A) ..............................................................................................17

42 USC § 247d-6d (a)(2)(B) ................................................................................................10

42 USC § 247d-6d (i) (1) .......................................................................................................8

42 USC § 247d-6d (i)(7) .........................................................................................................8

California *Business Profession Code* Section 17200 ...........................................................25

California *Civil Code* § 3294(a) ...........................................................................................24

California *Civil Code* § 3294(b) ...........................................................................................22

California *Civil Code* §334 ..................................................................................................24

California *Welfare & Institutions* Code § 15610.57 ............................................................18

California *Welfare and Institutions Code* §15600, et seq ....................................................18

California *Welfare and Institutions Code* §15610.07 ..........................................................18

California *Welfare and Institutions Code* §15657(c) ......................................................22, 23

California *Welfare and Institutions Code* Section 15657 ....................................................19

**RULES**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................3

**REGULATIONS**

21 CFR § 878.4040 ................................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On September 11, 2020, Plaintiff, Gary Gagliolo, Individually and as successor-in-Interest to the Estate of Joseph Gagliolo (hereinafter "Plaintiff") filed this action against Defendant, Spruce Holdings, LLC dba Redwood Springs Healthcare asserting causes of action for Negligence, Willful Misconduct, Violations of the Elder and Dependent Adult Civil Protection Act, and Wrongful Death. Kaweah Manor Inc. dba Kaweah Manor Convalescent Hospital was also named as a Defendant. However, Kaweah Manor has reached a settlement with Plaintiff.

This case involves the death of Joseph Gagliolo.  Plaintiff alleges that due to the wrongful acts and omissions of Defendant, Redwood Springs, decedent, Joseph Gagliolo became infected with virus that causes COVID-19 during his residency at Redwood Springs and died due to COVID-19 on April 27, 2020. (See Defendant's Request for Judicial Notice ("RFJN") Exhibit A- Complaint, pgs. 5-6, ¶s 15-18, pg. 6, ¶ 22, pgs. 7-9, ¶s 28-35 pg. 14, ¶ 60- pg. 15, ¶ 62, and pg. 15, ¶ 66)

Plaintiff further alleges that Defendant caused Mr. Gagliolo's death from COVID-19 by failing to implement an effective infection control program; properly organize, manage, operate and/or control the facility; and ensure its staff had adequate training.  (Exhibit A- Complaint, pg. 6, ¶s 21-22; pgs. 7-9 ¶s 29-31; pgs. 10, ¶ 37; pg.10-11, ¶ 40; pg. 12, ¶ 46; pg. 14, ¶ 60; and pg. 15, ¶s 61-62.)  Such claims, however, are preempted and barred by the Public Readiness and Emergency Preparedness Act ("PREP Act"), which provides Defendant with complete immunity as to claims relating to the administration of "covered countermeasures" (i.e., personal protective equipment ("PPE") and COVID-19 testing), and the management and operation of Defendant's countermeasures program.

While Plaintiff will argue these claims do not fall within the PREP Act, such claims by their very nature relate to the use of covered countermeasures, including personal protective equipment ("PPE") and COVID-19 testing, and/or the management and operation of Defendant's countermeasures program, for which Defendant has immunity under the PREP Act.  Plaintiff cannot allege Joseph Gagliolo's death was due to a failure to implement an effective infection control program to prevent COVID-19 without implicating covered countermeasures under the PREP Act, since such covered countermeasures are the only line of defense against and the centerpiece of any

infection control program used to prevent the spread of the virus that causes COVID-19.   (RFJN, Exhibits "J" through "DD")

Plaintiff's claims fall under the PREP Act even to the extent such claims are based on an alleged "failure to act."   On December 9, 2020, Health and Human Services ("HHS") Secretary Alex Azar issued the Fourth Amendment to his Declaration under the PREP Act which *makes clear that an omission or failure to administer a Covered Countermeasure can fall within the PREP Act's protections*.   (RFJN Ex. E, pgs. 79191, 79194 and 79197.)   Moreover, on January 8, 2020, the General Counsel for the Office of the HHS Secretary issued a further Advisory Opinion which states, among other points, that the PREP Act is triggered even in cases of non-use of a covered countermeasure when the non-use is due to prioritization or purposeful allocation of a scarce resource especially if done in accordance with a public health authority's directive. (RFJN Ex. "EE", pgs. 2-3.)

Pursuant to the provisions of the PREP Act, the Declarations of the HHS Secretary and Advisory Opinions discussed herein, Plaintiff's Complaint should be dismissed. If Plaintiff intends to pursue his claims, he must proceed as Congress intended under the PREP Act (i.e., in the appropriate forum by way of a claim through the Covered Countermeasure Process Fund or via a Complaint for Willful Misconduct filed in the United States District Court for the District of Columbia).

Additionally, in support of the Negligence, Willful Misconduct, Elder Abuse/Neglect, and Wrongful Death causes of action, Plaintiff alleges that Defendant failed to comply with a number of state laws and regulations governing skilled nursing facilities.   However, Plaintiff fails to plead any facts in support of such allegations and fail to set forth facts establishing how any such alleged violations caused or contributed to Mr. Gagliolo's death from COVID-19.   None of the regulations listed are applicable with respect to the COVID-19 pandemic.   As the result of the COVID-19 pandemic and national state of emergency, the CDC and Center for Medicaid and Medicare Services issued numerous directives and guidance.   It is these directives and guidance that are applicable in this case.   Plaintiff fails to set forth facts establishing that Defendant failed to follow these applicable government directives.

## II.   LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claims

-2-

1   asserted in a complaint. The Court must decide whether the facts alleged, if true, would entitle

2   Plaintiffs to some form of legal remedy. *De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978); *SEC*

3   *v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-727 (C.D. Cal.1995). For purposes of such a

4   motion, the court assumes as true all well-pleaded facts in a complaint and attached exhibits and views

5   them in a light most favorable to the Plaintiffs. *Zinermon v. Burch*, 494 U.S. 113, 118 (1990). The

6   court need not, however, accept as true legal characterizations, conclusory allegations, unreasonable

7   inferences or unwarranted deductions of fact.

8       The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if

9   established, support a valid claim for relief. *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). A pleading

10   that states a claim for relief must contain "a short and plain statement of the claim showing that the

11   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require

12   detailed factual allegations, it does demand more than an unadorned the-defendant-unlawfully-harmed-

13   me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662 (2008). A pleading that offers "labels and conclusions"

14   or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Bell Atl. Corp.*

15   *v. Twombly,* 550 U.S. 544 (2007)). Nor does a complaint suffice if it tenders "naked assertion[s]"

16   devoid of "further factual enhancement." *Id*. Factual allegations must be enough to raise a right to

17   relief above the speculative level. (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

18       In interpreting Rule 8, the Supreme Court emphasized in *Iqbal* that "a complaint must contain

19   sufficient factual matter, accepted as true, to state a claim to relief that is ***plausible*** on its face."

20   *Ashcroft v. Iqbal,* 556 U.S. at 678 (quotation omitted, emphasis added). Whether a complaint states a

21   plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its

22   judicial experience and common sense." *Id.* at 679. In this "context-specific" exercise, courts are not

23   bound to accept as true a legal conclusion couched as fact. *Twombly*, 550 U.S. at 555; *see also Iqbal*,

24   556 U.S. at 679 (Legal conclusions are "not entitled to the assumption of truth."). In sum, on a

25   12(b)(6) motion, conclusory statements should be set aside and then, assuming the veracity of any

26   well-pleaded factual allegations, the Court should "determine whether they ***plausibly*** give rise to an

27   entitlement to relief." *Iqbal,* 556 U.S. at 679 (emphasis added).

28   ///

1    Here, Plaintiff's Complaint is filled with legal conclusions masquerading as facts. Under the

2   legal standard for a Rule 12(b)(6) motion, Plaintiff has not and cannot allege facts sufficient to support

3   any of the claims alleged in the FAC.

4    Dismissal is also proper where an affirmative defense or other bar to relief is apparent from the

5   face of the complaint. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Further, where a

6   complaint alleges several distinct claims for relief, it is common practice to apply Rule 12(b)(6) to

7   individual causes of action. *Moran v. Peralta Comty. Coll. Dist.*,825 F. Supp. 891, 894-95 (N.D. Cal.

8   1993); *Strigliabotti v. Franklin Resources, Inc.*,398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005).

9    For purposes of a Rule 12(b)(6) motion, the Court may consider facts susceptible to judicial

10   notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007). A court may

11   consider matters of judicial notice without converting a Rule 12(b)(6) motion into a Rule 56 Motion

12   for Summary Judgment.  *U.S. ex rel. Modglin v. DJO Global Inc*. 48 F.Supp.3d 1362, 1370 (2014 C.D.

13   CA).  Under [Federal Rule of Evidence] Rule 201, the court can take judicial notice of 'public records

14   and government documents available from reliable sources on the internet' such as websites run by

15   government agencies." *Id*. at 1381.

16    The court may also strike a prayer for relief that is not available as a matter of law. *Susilo v.

17   Wells Fargo Bank, N.A.,* 796 F.Supp. 2d 1177, 1196 (C.D. CA 2011).

18   **III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE IMMUNITY AFFORDED TO**

19   **       DEFENDANT UNDER THE PREP ACT**

20    The Complaint alleges causes of action for Negligence, Willful Misconduct, Elder

21   Abuse/Neglect, and Wrongful Death.  These claims, are based upon Defendant's alleged failure to

22   implement an effective infection control program; properly organize, manage, operate and/or control the

23   facility; and ensure its staff had adequate training.  (Exhibit A- Complaint, pg. 6, ¶s 21-22; pgs. 7-9 ¶s

24   29-31; pgs. 10, ¶ 37; pg.10-11, ¶ 40; pg. 12, ¶ 46; pg. 14, ¶ 60; and pg. 15, ¶s 61-62.)

25    Plaintiff's allegations directly relate to Defendant's administration or use of covered

26   countermeasures and management of Defendant's countermeasures program in response to the ongoing

27   COVID-19 pandemic and thus, Defendant has immunity for all State and Federal claims relating to such

28   countermeasures and activities pursuant to the PREP Act.

**A. The PREP Act Generally and Authority of the HHS Secretary**

Under the PREP Act, 42 U.S.C. §§ 247d-6d and 247d-6e (2006), Congress has provided immunity for claims, as well as exclusive federal jurisdiction for the allegations and relief sought in Plaintiff's Complaint. This legislation empowers the Secretary of Health and Human Services ("HHS") to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law relating to the administration of a "Covered Countermeasure" during a health emergency.

Specifically, 42 U.S.C. §247d-6d(a)(1) provides as follows: **"Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a Covered Countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure."** [Emphasis added.]  Section (b) of the PREP Act provides that if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes as public health emergency, the Secretary may make a declaration setting forth that subsection (a) is in effect with respect to the manufacture, testing, development, distribution, administration or use of one or more Covered Countermeasures under conditions as the Secretary may specify in the Declaration or an amendment thereto.  42 U.S.C. § 247d-6d(b)(1) and (4).

The PREP Act further provides that "*[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection*." [Emphasis added.] Thus, under the PREP Act, Congress has not only provided immunity claims arising out of Covered Countermeasures, it has delegated regulatory authority to the HHS Secretary.  See 42 U.S.C. § 247d-6d(b)(7).

Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984).   See also *Auer v. Robbins*, 519 U.S. 452, 461 (1997). As Congress has expressly delegated the duty to apply and interpret the Act to the Secretary, the Declarations of the HHS Secretary are entitled to *Chevron* deference.

///

///

**B.  The Declarations of the HHS Secretary invoking the PREP Act**

On March 10, 2020, HHS Secretary Alex M. Azar issued a Declaration invoking the PREP Act for the COVID-19 pandemic, which was effective as of February 4, 2020. (See Defendants' RFJN Exhibit "B") Secretary Azar subsequently issued an Amended Declaration under the PREP Act, effective as of March 27, 2020. (See Defendants' RFJN Exhibit "C") The Amendment added respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health) as a covered countermeasure under the Act.  On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Second Amendment was effective as of February 4, 2020.  (See RFJN Exhibit "D")

On ***December 9, 2020***, Secretary Azar published a Fourth Amendment to the Declaration under the PREP Act, and made this Amendment effective as of February 4, 2020. (See Defendants' RFJN Exhibit "E"- December 9, 2020 Fourth Amendment to the Declaration Secretary Azar.) This Fourth Amendment ***makes clear that COVID-19 cases involving interpretation of the PREP Act and/or Covered Countermeasures are to be in the federal court system or in the administrative alternative remedy Congress provided.*** (See RFJN Exhibit "E"- pages 79191, 79714, and 79197-79198) This Amendment also makes explicit that ***an omission or failure to administer a Covered Countermeasure can fall within the PREP Act's protections***. (See RFJN- Exhibit "E" pgs. 79191, 79194, and 79197)

The Fourth Amendment to the Secretary's Declaration further provides that:

> "***the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions . . . on the Public Readiness and Emergency Preparedness Act and the Declaration ("Advisory Opinions").  The Declaration incorporates the Advisory Opinions for that Purpose***."  [Emphasis added.] (See RFJN "E", pgs. 79191, 79194-79195)

Thus, the Fourth Amendment incorporates all HHS Office of the General Counsel Advisory Opinions related to COVID-19 and the PREP Act into the Secretary's March 10, 2020 initiating Declaration.

On January 8, 2021, the General Counsel for the Office of the HHS Secretary issued a further Advisory Opinion which states, among other points, that the PREP Act: (1) **is a complete preemption**

statute; and (2) is triggered even in cases of non-use of a covered countermeasure when the non-use is due to prioritization or purposeful allocation.   In this Advisory Opinion, the General Counsel specifically stated that there are situations where a conscious decision not to use a covered countermeasure could relate to the administration of the countermeasure.  For example, where there has been allocation of a scarce resource, such as PPE, and such decision is the outcome of a decision-making process. (See RFJN, Ex. "EE", pgs. 2-3.) The January 8, 2021 Advisory Opinion further provides that "[a] program planner is someone who is involved in providing or allocating covered countermeasures. Program planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them.  Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by the PREP Act." (RFJN Exhibit "EE", pg. 4) Beyond question, all Advisory Opinions and the Declarations of the HHS Secretary must be given *Chevron* controlling weight.  See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984).

On January 28, 2021, the Acting HHS Secretary for the Biden Administration issued the Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19.   This Amendment adds additional categories of "Qualified Persons" authorized to prescribe, dispense and administer COVID-19 vaccines.   In the Amendment, the Acting HHS Secretary cites to the Declarations and Amendments issued during the Trump Administration including Amendment Four which provides that the Declarations must be construed in accordance with the Advisory Opinions.  The Fifth Amendment further reiterates that "[t]he plain language of the Prep Act makes clear that there is complete preemption of state law" and that "preemption of State law is justified to respond to the nation-wide public health emergency caused by COVID-19 . . ."  (See RFJN Ex. "FF" pages 1 and 3.)

### C.  The PREP Act Applies to the Allegations in the Complaint

The PREP Act is applicable with respect to a "covered countermeasure," which definition includes: "(1) a qualified pandemic or epidemic product (as defined in § 247d-6d (i) (7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and

Health ("NIOSH") and that the Health and Human Service Secretary determines to be a priority for use during a public health emergency declared under section 247d."  42 USC § 247d-6d (i) (1). A "qualified pandemic or epidemic product" is defined as: a drug, biologic product or device that is:

> "(A)(i) a product manufactured, used, designed, developed, modified, licensed, or procured—
> (I) to diagnose, mitigate, prevent, treat, or cure a pandemic or epidemic; or
> (II) to limit the harm such pandemic or epidemic might otherwise cause;
> (ii) a product, manufacture, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious of life-threatening disease or condition caused by a product described in clause (i); or
> (iii) a product or technology intended to enhance the use or effect of a drug, biologic product, or device described in clause (i) or (ii); and
> (B)(i) approved or cleared under chapter V of the Federal Food, Drug, and Cosmetic Act or licensed under section 262 of this title;
> (ii) the object of research for possible use as described in subparagraph (A) and is the subject of an exemption under section 505(i) or 520(g) of the Federal Food, Drug, and Cosmetic Act; or
> (iii) authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug and Cosmetic Act."

See 42 USC § 247d-6d (i)(7).

Robert P. Charrow, General Counsel for the Department of HHS, Office of the Secretary, issued an omnibus Advisory Opinion on April 17, 2020, as modified on May 19, 2020, to address the scope of PREP Act immunity for the COVID-19 pandemic.  The Opinion summarized the requirements to meet the definition of a qualified pandemic or epidemic product noting that the product: (1) must be used for COVID-19; and (2) must be approved, licensed, or cleared by FDA; authorized under an EUA [emergency use authorization]; described in an EUI [emergency use instructions]; or used under either an Investigational new Drug (IND) application or an Investigational Device Exemption. (See RFJN Exhibit "H", First Advisory Opinion, pg. 4.)

Attached as Appendix A to this Advisory Opinion is a list of the "covered countermeasures" for which EUAs have been issued by the FDA. (RFJN Exhibit "I".) The list includes twelve pages of COVID-19 test kits, and provides that face shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved respirators are covered by an EUA. Surgical masks are not listed; however, such masks are Class II medical devices which are cleared by the FDA for use.  (See 21 CFR § 878.4040) Thus, COVID-19 testing kits, face

masks, gowns, gloves and other PPE are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are included in an EUA.

Plaintiff alleges that Redwood Spring caused Mr. Gagliolo's death from COVID-19 by failing to implement an effective infection control program; properly organize, manage, operate and/or control the facility; and ensure its staff had adequate training. (Exhibit A- Complaint, pg. 6, ¶s 21-22; pgs. 7-9 ¶s 29-31; pgs. 10, ¶ 37; pg.10-11, ¶ 40; pg. 12, ¶ 46; pg. 14, ¶ 60; and pg. 15, ¶s 61-62.)  While Plaintiff will argue these claims do not fall within the PREP Act, such claims by their very nature relate to the use of covered countermeasures, including personal protective equipment ("PPE") and COVID-19 testing, and/or the management and operation of Defendant's countermeasures program, for which Defendant has immunity under the PREP Act.  Plaintiff cannot allege Joseph Gagliolo's death was due to a failure to implement an effective infection control program to prevent COVID-19 without implicating covered countermeasures under the PREP Act, since such covered countermeasures are the only line of defense against and the centerpiece of any infection control program used to prevent the spread of the virus which causes COVID-19. (RFJN, Exhibits "J" through "DD")

Moreover, on January 13, 2021, in an effort to meet and confer regarding the removal and remand issues in this case, Defendants' counsel forwarded correspondence to Plaintiff's counsel and requested that Plaintiff stipulate that Plaintiff is not contending and will not contend that Defendant was deficient in its use of and/or failure to utilize PPE and/or with respect to COVID-19 testing, as this would narrow the issues to be addressed on Plaintiff's Motion to Remand and in the case.  (A true and correct copy of this meet and confer letter is attached to the Declaration of Kim Cruz as Exhibit "GG" thereto; Also see Defendant's Exhibits "HH" and "II".) Plaintiff has not agreed to stipulate that there would be no claims regarding covered countermeasures such as PPE and COVID-19 testing. (See Declaration of Kim Cruz, pgs. 5-6, ¶ 33.) If Plaintiff was truly not raising any claims relating to covered countermeasures, such as PPE and COVID-19 testing, Plaintiff would have entered into a stipulation to that effect.

///

Moreover, Plaintiff's claims, even if based on a failure to act, do fall under the PREP Act. Immunity under the PREP Act "applies to **any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the** . . . distribution . . . **purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure**." [Emphasis added.] 42 USC § 247d-6d (a)(2)(B).

In his initial March 10, 2020 Declaration, HHS Secretary Azar noted that the "PREP Act does not explicitly define the term 'administration' but does assign the Secretary the responsibility to provide relevant conditions in the Declaration."   In Section IX of the Declaration, Secretary Azar defines "administration of a covered countermeasure" as the "physical provision of the countermeasures to recipients ***or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients***; ***management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures***." [Emphasis added.]   (See RFJN Exhibit "B", pg. 15200, second column.) Accordingly, the "administration" of countermeasures goes well beyond the simple physical provision of countermeasures to a recipient but extends to "activities related to management and operation" of countermeasure programs.

Moreover, Secretary Azar's Fourth Amendment to his Declaration makes explicit that ***an omission or failure to administer a Covered Countermeasure can fall within the PREP Act's protections***. The Fourth Amendment explains that, for example, if there are limited countermeasures, "*not* administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d-6d." ***"Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.***" [Emphasis added.] (See Defendants' RFJN- Exhibit "F", pgs. 79191, 79194, and 79197.)

///

///

The January 8, 2021, Advisory Opinion of the General Counsel for HHS, Office of the Secretary, further confirms that the PREP Act can be triggered even in cases of non-use of a covered countermeasure when the non-use is due to prioritization or purposeful allocation "particularly if done in accordance with a public health authority's directive."    In the Opinion, General Counsel Charrow states that the view that the PREP Act does not encompass alleged omissions to use covered countermeasures, "clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." (RFJN "EE", Advisory Opinion 21-01, pgs. 2-3.)  In the opinion, *General Counsel Charrow indicates that the PREP Act is triggered in cases where a plaintiff alleges a failure to use PPE, if the failure was due to the allocation of a scarce resource and the outcome of some form of decision-making process*.  (RFJN "EE", Advisory Opinion 21-01, pg. 3.)

Further, as established below, Redwood Springs is a "program planner" that was supervising and administering a program with respect to the administration, dispensing, provision and use of covered countermeasures.   In his January 8, 2021 Advisory Opinion, General Counsel Charrow states that "[a] program planner is someone who is involved in providing or allocating covered countermeasures. Program planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them.  Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by the PREP Act." (RFJN Exhibit "EE", pg. 4)

During the time frame relevant to Plaintiff's complaint, the CDC, CMS and CDPH and has all issued directives pertaining to the preservation of PPE and had instructed facilities to test only symptomatic patients. (See RFJN, Exhibits. "J", "K", "L", "P", "T", "U", "V" and "Y".) Redwood Springs was complying with these directives with respect to the prioritization and purposeful allocation of covered countermeasures, as part of its countermeasures and infection control program. The broad definition of "Administration" of covered countermeasures encompasses Redwood Springs' plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate.   The Fourth Amendment to Secretary Azar's Declaration and the January 8, 2021 Advisory Opinion of Secretary Charrow, which

1    are entitled to *Chevron* deference, further support this position.

2          The Court in *Parker v. St. Lawrence County Public Health Department,* 102 A.D.3d 140 (N.Y.

3    App.Div. 2012) reached the same conclusion.  The *Parker* Court held that "[c]onsidering the breadth of

4    the preemption clause together with the sweeping language of the statute's immunity provision, we

5    conclude that Congress intended to preempt all state law tort claims arising from the administration of

6    covered countermeasures by a qualified person pursuant to a declaration by the Secretary, including one

7    based upon a defendant's failure to obtain consent."  *Id.* at p. 144

8          The PREP Act provides immunity for claims involving "covered countermeasures" under the

9    Act.  Plaintiff's claims involve activities and decisions directly related to the delivery, distribution and

10   dispensing of countermeasures to recipients and the management and operation of Redwood Springs'

11   covered countermeasures program, including the training of staff with respect to the use of covered

12   countermeasures and decisions as to how best to prioritize and allocate supplies of PPE and utilize

13   COVID-19 testing kits in light of known regional and national shortages.  (See RJFN Ex. "DD" page 1)

14   As set forth in Secretary Azar's initial Declaration and as confirmed in the Fourth Amendment to the

15   Declaration and General Counsel Charrow's October 22, 2020 and January 8, 2021 Advisory Opinions,

16   the broad definition of "administration of a covered countermeasure" encompasses Defendant's plans

17   and decisions with respect to the prioritization and allocation of supplies of PPE and  COVID-19 testing

18   kits, and whether and when the use of such countermeasures is appropriate.  Moreover, during the

19   relevant time frame to Plaintiff's claims, Redwood Springs was subject to guidance/directives issued by

20   the Centers for Disease Control and Prevention ("CDC"), Centers for Medicaid and Medicare Services

21   ("CMS"), and the California Department of Public Health ("CDPH"), and was following this applicable

22   public health guidance with respect to the use of PPE and COVID-19 testing.

23         The PREP Act provides immunity to any claims relating to the use or deficiencies in the use of

24   covered countermeasures (including PPE and COVID-19 testing), the administration of Defendant's

25   covered countermeasures and infection control program including a program regarding prioritization

26   and purposeful allocation of covered countermeasures, and/or the management and operation of

27   Defendant's countermeasures program which would include the training of staff with respect to the use

28   of covered countermeasures.  Plaintiff's allegations that Redwood Springs failed to implement an

-12-

effective infection control program; properly organize, manage, operate and/or control the facility; and ensure its staff had adequate training fall within these immunity provisions.  Redwood Springs has thus established that PREP Act applies to Plaintiff's claims thereby providing Defendant with immunity under the Act.

**D. Redwood Springs is a "Covered Person and Program Planner" as defined under the PREP Act**

Immunity under the PREP Act is afforded to "covered persons" which include a person or entity that is a "program planner" of a covered countermeasure, and/or a qualified person who prescribed, administered, or dispensed such countermeasure. Under the Act, "person" includes "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. §247d-6d (i)(2) and (5).  The term "program planner" includes persons/entities "who supervised or administered a program with respect to the administration, dispensing, . . . provision, or use of a . . . qualified pandemic product or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a [HHS Secretary's] declaration . . . ."    42 U.S.C. §247d-6d (i)(6).  (See also RJFN, ex. "B" – Initial Declaration of the HHS Secretary, pgs. 15201-15202; and ex. "FF" Fifth Amendment to the Declaration, pgs.  3-4.)

A private sector employer or other person can be a "program planner" when it carries out prescribed activities.  (See Defendants' RFJN- Exhibit "B" -March 10, 2020 Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, Federal Register, Vol. 85, No. 52, pg. 15199.)  Robert Charrow, General Counsel for the Office of the Secretary of the Department of Health and Human Services, also recently issued a letter which provides that a "senior living community" meets the definition of a "program planner" to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision or use of a qualified pandemic or epidemic product, including the provision to a facility to administer or use a covered countermeasure. (RFJN Exhibit "F".) The broad definition of "program planner" was also addressed in Advisory Opinion 20-04, issued October 22, 2020, by General Counsel Charrow. (RJFN Exhibit "G" pgs. 2-3)

Defendant qualifies as a "covered person" under the PREP Act. At the time of the allegation set forth in the Complaint, Redwood Springs was acting as a "program planner" and "qualified person." Redwood Springs is a skilled nursing facility licensed by the California Department of Public Health, which employs licensed nursing personnel, including Registered Nurses and Licensed Vocational Nurses, who are authorized to prescribe, administer, or dispense the covered countermeasures set forth in Plaintiff's Complaint (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the laws of the State of California. Additionally, Redwood Springs is a program planner that was supervising and administering a program with respect to the administration, dispensing, provision and use of qualified pandemic and epidemic products, and involved in providing and allocating covered countermeasures.

## IV.  PLAINTIFF'S REMEDY FOR THE CLAIMS RELATING TO COVERED COUNTERMEASURES IS TO FILE A CLAIM UNDER 42 U.S.C. §247d-6e

The sole exception to the PREP Act immunity from suit and liability (other than actions by and against the United States), is "for an exclusive Federal cause of action against a covered person for death or serious injury proximately caused by willful misconduct" which must be filed in the United States District Court for the District of Columbia. 42 U.S.C. §§247d-6d(d)(1) and (e)(1).

"Willful misconduct" under the PREP Act, is defined as **an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."** [Emphasis added.] 42 U.S.C. §247d-6d(c)(1)(A). Plaintiffs have the burden of proving by clear and convincing evidence, "willful misconduct" by each covered person sued and that such "willful misconduct" caused death or serious injury. 42 U.S.C. §247d-6d (c)(3).

For claims barred pursuant to the immunity under 42 U.S.C. §247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under §247d-6e, which permits an individual to make a claim for a "covered injury directly caused by the administration or use of a covered countermeasure." Even a claimant alleging "willful misconduct" must first apply for benefits under §247d-6e before filing an action under §247d-6d (d) relating to the "willful misconduct" thus further illustrating Congress' intent for the Act to cover all claims related to a "covered countermeasure."

Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity, and has created an exclusive cause of action for the claims asserted by Plaintiff and the procedures and remedies governing the cause of action.  In fact, ***Plaintiff has alleged a cause of action for willful misconduct.  Plaintiff, however, failed to bring such cause of action in the proper federal forum.***  An alternative remedy is also available for any claims barred by 42 U.S.C. § 247d-6d. Under § 247d-6e, an individual is permitted to claim no-fault benefits through the Covered Countermeasure Process Fund for a "covered injury directly caused by the administration or use of a covered countermeasure."

Plaintiff's Complaint must be dismissed. If Plaintiff intends to pursue his claims, he must proceed as Congress intended under the PREP Act (i.e., in the appropriate forum by way of a claim through the Covered Countermeasure Process Fund under 42 USC § 247d-6e, or via a Complaint for Willful Misconduct filed in the United States District Court for the District of Columbia).

## V.   PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION FOR NEGLIGENCE

To allege a cause of action, Plaintiff must plead facts establishing that (1) Defendant was negligent by breaching the applicable standard of care, (2) that Plaintiff was injured, and (3) that Defendant's negligence caused Plaintiff's injuries.  *Bushling v. Fremont Medical Center*, 117 Cal.App.4th 493, 507 (2004).  In support of this cause of action, Plaintiff alleges that Redwood Springs failed to: (1) ensure that each care worker received adequate training before working with decedent; (2) properly handle and implement measures to prevent Decedent from contracting pneumonia, COVID-19 and suffering other injuries; (3) note and properly react to emergent conditions and provide timely medical care to Decedent; and (4) treat Decedent as an individual with respect, dignity and without abuse.

However, such general allegations are not applicable to the standard of care at the facility during the COVID-19 pandemic. The pandemic resulted in waivers of existing regulations and a slew of new government guidance and directives, which evolved along with the pandemic. It is these directives and guidance that are applicable in this case.  Plaintiff, however, fails to plead facts alleging that Defendant failed to follow these applicable government directives. Moreover, as detailed above, Defendant has immunity under the PREP Act to the extent Plaintiff's claims relate to the use or deficiencies in the use

-15-

of covered countermeasures (including PPE and COVID-19 testing), the administration of Defendant's covered countermeasures and infection control program including a program regarding prioritization and purposeful allocation of covered countermeasures, and/or the management and operation of Defendant's countermeasures program which would include the training of staff with respect to the use of covered countermeasures.

Further, while Plaintiff pleads that Defendants were negligent, Plaintiff fails to plead facts alleging that Mr. Gagliolo suffered any recoverable damages as a result of Defendants' alleged negligence. With respect to the damages recoverable in a survival action, Civil Code § 377.24, provides, in pertinent part, as follows:

> "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death . . . and do not include damages for pain, suffering, or disfigurement."

Thus, general damages are not available under the successor claim for Negligence.  The only damages available are economic damages incurred by Mr. Gagliolo prior to his death.  There are no such damages specifically alleged in the Complaint.  Thus, the Negligence cause of action fails to state a claim upon which relief may be granted.

## VI.   WILLFUL MISCONDUCT IS NOT A RECOGNIZED TORT UNDER CALIFORNIA LAW AND PLAINTIFF HAS FAILED TO STATE A WILLFUL MISCONDUCT CLAIM UNDER THE PREP ACT

### A.   Willful Misconduct is not a Recognized Tort under California Law

There is no tort for willful misconduct recognized in California. (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518.)  "It is not a separate tort, but simply 'an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care.'" (*Id*. at 526.)

### B.   Plaintiff Has Failed to State a Willful Misconduct Claim under the PREP Act

As set forth above, the sole exception to the PREP Act immunity from suit and liability (other than actions by and against the United States) for action relating to covered countermeasures is "for an exclusive Federal cause of action against a covered person for death or serious injury proximately

caused by willful misconduct" which must be filed in the United States District Court for the District of Columbia.  42 U.S.C. §§247d-6d(d)(1) and (e)(1).

"Willful misconduct" under the PREP Act, is defined as "**an act or omission that is taken— (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; <u>and</u> (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.**"   [Emphasis added.] 42 U.S.C. §247d-6d(c)(1)(A).   Plaintiff has the burden of proving by clear and convincing evidence, "willful misconduct" by each covered person sued and that such "willful misconduct" caused death or serious injury.  42 U.S.C. §247d-6d (c)(3).

Moreover, Willful Misconduct actions under the PREP Act must be plead with particularity as to each element of the Plaintiff's claim including (1) each act or omission, by each covered person sued, that is alleged to constitute willful misconduct; (2) facts supporting the allegation that such alleged willful misconduct proximately caused the injury claimed; and (3) facts supporting the allegation that the person on whose behalf the complaint was filed suffered death or serious physical injury. 42 U.S.C. §247d-6d (e)(3).

Plaintiff's general and conclusory allegations fail to meet the requirements for pleading with particularity under the PREP Act.   Moreover, even if such claim did meet this threshold, the claim, if Plaintiff wishes to pursue it, must be filed in the District Court for the District of Columbia. 42 U.S.C. §247d-6d (e)(1).

Thus, this cause of action fails to state a claim upon which relief may be granted and should be dismissed.

## VII.   PLAINTIFF'S ELDER ABUSE CAUSE OF ACTION IS INSUFFICIENT AS A MATTER OF LAW

The Elder Abuse and Dependent Adult Civil Protection Act, (hereinafter "the Elder Abuse Act"), is a remedial scheme under which heightened remedies may be sought where it is established that a defendant has engaged in specific types of tortious conduct: i.e., abuse or neglect of an elder or dependent adult. California *Welfare and Institutions Code* §15600, et seq.  This requires that the patient or resident was subjected to physical abuse, neglect or deprivation by a care custodian of goods and

services that are necessary to avoid physical harm or mental suffering. California *Welfare and Institutions Code* §15610.07)

Neglect under California *Welfare & Institutions* Code § 15610.57 is defined as "the negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."  Under the Elder Abuse Act, neglect includes the failure to provide medical care for physical and mental health needs and the failure to protect from health and safety hazards.  The California Supreme Court in *Covenant Care, Inc. v. Superior Court*, 32 Cal.4th 771 (2004), has explained that "neglect" as used in the Elder Abuse Act, is reserved for the "especially egregious abuse" proven to a "high standard," as opposed to ordinary acts of medical negligence.  The California Supreme Court has held that even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act. *Id*. at 785.   The California Supreme Court has emphasized that the Elder Abuse Act was intended to cover an area distinct and completely separate from medical negligence.  *Id*. at 790,

> "...'neglect' as defined in former Section 15610.57 and used in Section 15657 does not refer to the performance of medical services in a manner inferior to         'the knowledge skill, and care ordinarily possessed or employed by members of the profession in good standing' (citations omitted), but rather to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to   carry out their custodial obligations." *Ibid*.

California *Welfare and Institutions Code* Section 15657 further provides enhanced remedies for elder abuse/neglect, but with very strict requirements:

> "Where it is proven by ***clear and convincing evidence*** that a defendant is liable for physical abuse [or] neglect . . . ***and*** that the defendant has been guilty of ***recklessness, oppression, fraud or malice*** in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:
>
> (a) The court shall award to the Plaintiffs reasonable attorney's fees and costs . . .
> (b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.]  However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code.
> (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees

-18-

permitted under this section may be imposed against an employer." [Emphasis added.]

Thus, in order to obtain the enhanced remedies available under the Elder Abuse Act, Plaintiffs are required to plead **specific** allegations constituting (1) **physical abuse or neglect**, of an elderly adult **_and_** (2) that such abuse or neglect was done with **malice, oppression, fraud, or recklessness**.  In other words, Plaintiffs must plead conduct that amounts to at least recklessness.  Claims for elder abuse, with the heightened remedies recoverable, require conduct above and beyond that found in a medical negligence case.  Specifically, elder abuse requires clear and convincing evidence of recklessness, oppression, fraud, or malice.  See *Delaney v. Baker*, 20 Cal.4th 23 (1999); *Mack v. Soung,* 80 Cal.App.4th 966 (2000).)

Unlike a negligence cause of action where notice pleading is sufficient, when pleading a claim for elder abuse, factual allegations cannot be made in conclusory terms.  *Covenant Care, Inc. v. Superior Court,* 32 Cal.4th 771, 790 (2004).  The California Supreme Court made it clear that "statutory causes of action must be pleaded with particularity."  *Id*. at 790.  In other words, a Plaintiffs must plead facts sufficient to establish every element of the cause of action pled, as allegations are nothing more than theories and do not establish any element of any cause of action.  *Carter v. Prime Healthcare Paradise Valley, LLC*., 198 Cal.App.4th 396, 407 (2011).  Conclusory language which mirrors the required statutory language is insufficient.  *Covenant Care, Inc. v. Superior Court*, 32 Cal.4th at 790.

In *Delaney v. Baker*, 20 Cal.4th 23 (1999), the California Supreme Court reviewed the legislative history behind the Elder Abuse Act and concluded that the purpose and intent of the Act was to protect a uniquely vulnerable and exploitable population from gross mistreatment in the form of abuse and custodial neglect.  The California Supreme Court stated that the enactment of the Elder Abuse Act was not to provide additional remedies to elders or dependent adults who find themselves the victims of medical malpractice and wish to overcome the MICRA limitations. *Id*. at 34.  In particular, a cause of action for elder abuse, requires a Plaintiffs to plead facts sufficient to establish that the **defendant recklessly or maliciously engaged in "egregious conduct" amounting to a "failure to provide medical care," as opposed to mere medical negligence.**  *Id*. at 34-35 [Emphasis added].

"Recklessness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action ... with knowledge of the serious danger to others involved in it.'" [Citation omitted] *Id.* at 31-32.  Moreover, "neglect" as used in the Elder Abuse Act, "covers an area of misconduct distinct from 'professional negligence.'  As used in the Act, neglect refers not to the substandard performance of medical services but rather, to the '**failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations**.' [Citations omitted.] Thus, the statutory definition of 'neglect' speaks not of the undertaking of medical services, but of the failure to provide medical care."  [Emphasis added.]. *Covenant Care* at 783.  "**Even gross negligence committed in the provision of professional services does not rise to the level of egregious conduct intended to be actionable under the Act**. *Covenant Care*, at 785. [Emphasis added.]

Here, Plaintiffs alleges that Redwood Springs failed to protect Joseph Gagliolo from health and safety hazards and neglected him by failing to prevent him from suffering falls, fractures, pneumonia and COVID-19. (RFJN Exhibit A- Complaint, pgs. Pg. 14-15, ¶s 57-62)

As noted above, Defendant has complete immunity with respect to the claims relating to covered countermeasures employed to prevent the spread of the virus which causes COVID-19.

Moreover, as to these and all of Plaintiff's claims, Plaintiff fails to allege any facts establishing recklessness, oppression, fraud or malice on the part of Redwood Springs.  The Complaint alleges few facts at all, and pleads only conclusory language relating the Defendant's supposed recklessness, malice oppression and/or fraud.  Plaintiff's claims offer only "labels and conclusions" with are insufficient with even the basic pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and  *Ashcroft v. Iqbal*, 556 U.S. 662 (2008), and certainly fails to meet the specificity requirements for Elder Abuse claims under the California law as set forth by the California Supreme Court in  *Covenant Care, Inc. v. Superior Court,* 32 Cal.4th 771, 790 (2004).

Plaintiff has failed to allege any conduct that "rises to the level of a conscious choice of a course of action ... with knowledge of the serious danger to others involved in it."  Further, assuming Plaintiff's claims to be true, even if Defendant was short staffed or failed to prevent decedent from

-20-

1   contracting COVID-19, this occurred during a pandemic with known state and nationwide staffing

2   shortages and a scarcity of PPE and COVID-19 testing kits. Any alleged inability to provide sufficient

3   staffing or other resources during the COVID-19 pandemic was not a "conscious choice" of action on

4   the part of the facility, but was instead due to circumstances beyond the facility's control, which arose

5   as a result of the pandemic.

6        In support of their claim for Elder Abuse, Plaintiff also alleges that Redwood Springs failed to

7   comply with a number of state laws and regulations governing skilled nursing facilities.  However,

8   Plaintiff fails to plead any facts in support of the otherwise conclusory allegations and fails to explain

9   how the alleged violations of these regulations caused decedent injury or his death.  Moreover, none of

10  the regulations listed are applicable with respect to the COVID-19 pandemic.  In response to the

11  COVID-19 pandemic and national state of emergency, the CDC, CMS and CDPH issued numerous

12  directives and guidance. It is these directives and guidance that are applicable to the care at issue in

13  this case.  Yet, there is no mention of these regulations in the Complaint.   (See Defendants' RFJN,

14  Exhibits "J" through "DD".)

15       Plaintiff further alleges that Redwood Springs failed to maintain the required minimum daily

16  average of "3.0 nursing hours per patient day" and failed to employ an adequate number of qualified

17  personnel.  (RFJN Exhibit A- Complaint, pgs. 9, ¶s 31k and 31 l.) However, in recognition of the

18  staffing shortages experienced by skilled nursing facilities due to the COVID-19 pandemic, on March

19  30, 2020, the California Department of Public Health ("CDPH") issued an All Facilities Letter

20  suspending the State's staffing regulations.   (RFJN Exhibit "CC".)

21       Finally, Plaintiff's allegations against Defendant relate to their roles as the employers of the

22  administration staff responsible for operation of Redwood Springs, and the staff providing care to

23  Joseph Gagliolo. Thus, to be entitled to recover any damages or attorney's fees under the Elder Abuse

24  Act, Plaintiff must allege facts establishing that (1) the Defendant employer had advance knowledge of

25  the unfitness of the employee and employed him or her with a conscious disregard of the rights or

26  safety of others or authorized; or (2) ratified the wrongful conduct for which the damages are awarded

27  or was personally guilty of oppression, fraud, or malice. Moreover, "[w]ith respect to a corporate

28  employer, the advance knowledge and conscious disregard, authorization, ratification or act of

-21-

oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." See California *Welfare and Institutions Code* §15657(c) and California *Civil Code* § 3294(b).

Here, Plaintiff generally alleges, with no supporting facts, that Defendant: (1) had advance knowledge of the unfitness of its employees and employed them with a knowing disregard of the rights and safety of others; (2) authorized the wrongful acts alleged in the complaint; (3) ratified said wrongful conduct; or (4) were personally guilty of oppression, fraud, malice and/or recklessness. (RFJN Ex. A- Complaint, pg. 4, ¶ 10) Plaintiff has failed to plead facts, as opposed to conclusions, relating to ratification or advanced knowledge of the unfitness of an employee as required to recover any damages under the Elder Abuse Act.

For the foregoing reasons, Plaintiff's cause of action for elder abuse/neglect should be dismissed without leave to amend.

## VIII.   PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL DEATH FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

The elements of wrongful death are "(1) a 'wrongful act or neglect' on the part of one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Nogart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999).  In support of Plaintiff's cause of action for Wrongful Death, Plaintiff alleges only that decedent died as a result of the conduct alleged in paragraphs 17-30, of the Complaint. Plaintiff fails set forth how any of the alleged vaguely plead omissions caused or contributed to Mr. Gagliolo's death from COVID-19.  Moreover, the PREP Act preempts and provides immunity as to Plaintiff's state law claims, including the cause of action for Wrongful Death, to the extent that such claims relate to covered countermeasure and/or the operation and management of Defendant's covered countermeasures program.

## IX.   PLAINTIFF HAS FAILED TO PLEAD SUFFICIENT FACTS TO SUPPORT THE CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES

California *Welfare and Institutions Code* § 15657 provides enhanced remedies under the Elder Abuse Act, in certain situations, but with very strict requirements:

"Where it is proven by clear and convincing evidence that a defendant is liable for physical

abuse [or] neglect . . . and that the defendant has been guilty of recklessness, oppression, fraud or malice in the commission of this abuse, the following shall apply, in addition to all other remedies otherwise provided by law:

(a) The court shall award to the Plaintiffs reasonable attorney's fees and costs . . .
(b) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [Decedent's pain and suffering.]  However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 [$250,000] of the Civil Code.
(c)  The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

Moreover, with respect to punitive damages, California *Civil Code* § 3294 provides, in pertinent part, as follows:

"(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the Plaintiffs, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.
(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, ***unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation***." [Emphasis added.]

Here, while Plaintiff's Complaint contains prayers for punitive damages pursuant to California *Civil Code* § 3294 and attorney's fees and costs pursuant to California *Welfare and Institutions Code* § 15657, Plaintiff has failed to plead any facts relating to ratification or advanced knowledge of the unfitness of an employee as required to recover such damages.  As such, Plaintiff has failed to plead facts sufficient to support the claims for attorney's fees and punitive damages.  These claims for damages should therefore be stricken from the Complaint pursuant to Federal *Rules of Civil Procedure*, Rule 12(f).

///

///

## X.   PLAINTIFF IS NOT ENTITLED TO TREBLE DAMAGES UNDER CIVIL CODE SECTION 3345

Plaintiff also seeks to recover "treble punitive damages" pursuant to California *Civil Code* §3345. (RFJN Exhibit "A" pg. 16, Prayer.)  However, § 3345 is inapplicable to Plaintiff's pled claims and allegations.

§3345 provides that "This section shall only apply in actions brought by, or on behalf of, or for the benefit of senior citizens or disabled person, … to redress unfair or deceptive acts or practices or unfair methods of competition."  Moreover, §3345(b) allows for the trebling of damages in only certain circumstances for violations of statutes meant to punish the wrongdoer when defendant's conduct caused the senior citizen(s) to lose their home, employment, retirement, etc.  Here, the Complaint alleges negligence, willful misconduct, elder neglect and wrongful death arising out of the acts and omissions by professional healthcare providers at Redwood Springs.  The Complaint does not allege any unfair or deceptive practices or unfair methods of competition.

For instance, in *Clark v. Superior Court* (2010) 50 Cal.4th 605 a class of senior citizens sued an insurance company regarding annuities it sold, claiming deceptive business practices under *Business Profession Code* Section 17200 and sought treble damages under *Civil Code* Section 3345.  Yet, even under those circumstances, the Supreme Court held that since *Business Profession Code* Section 17200 was not a penalty remedy, treble damages under *Civil Code* Section 3345 were not allowed.  Thus, Plaintiff's prayer for treble damages under *Civil Code* Section 3345 should be stricken from the Complaint.

///
///
///
///
///
///
///
///

1

**XI.   CONCLUSION**

2

For all of the foregoing reasons, Plaintiff's Complaint should be dismissed without leave to

3

amend, and Plaintiff should be barred from bringing any further actions against these Defendant, in

4

any venue or jurisdiction, whether in Federal or State court, for the actions and injuries alleged in the

5

subject Complaint.  Defendant further respectfully requests the Court issue an order striking out the

6

unsubstantiated claims for attorney's fees and punitive damages and prayer for "treble punitive

7

damages" as set forth in the Notice to this Motion and Points and Authorities in support thereof.

8

9

Dated:  February 1, 2021                               WILSON GETTY LLP

10

11

By:   /s/ Kim S. Cruz

12

William C. Wilson
Kim S. Cruz
Ryan Canavan

13

14

Attorneys for Defendant SPRUCE HOLDINGS, LLC dba
REDWOOD SPRINGS HEALTHCARE CENTER

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
**Case No. 1:20-cv-01719-NONE-ASB**

*Gary Gagliolo, individually and as SII to the Estate of Joseph Gagliolo v. Kaweah Manor, Inc. dba Kaweah Manor Convalescent Hospital, et al.*
**United States District Court**
**Eastern District of Caliornia**
**Case No.**
**\*\*\***
**PROOF OF SERVICE**

I am employed in San Diego County.  I am over the age of 18 and not a party to this action.  My business address is 12555 High Bluff Drive, Suite 270, San Diego, California 92130.

On **February 1, 2021**, I served the foregoing documents, described in this action as:

**SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S NOTICE OF MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f)); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KIM S. CRUZ IN SUPPORT THEREOF, AND [PROPOSED] ORDER THEREON**

As follows:

Dawn M. Smith, Esq.
Eric D. Hitchcock, Esq.
Smith Clinesmith, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
T: 214.953.1900
F: 214.953.1901
Email: dawn@smithclinesmith.com
Email: Eric@smithclinesmith.com
*Counsel for Plaintiff*

**[X]    By CM/ECF ELECTRONIC DELIVERY:**    In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

**[X]**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **February 1, 2021** at San Diego, California.

_____
Tonya Jamois

---

**PROOF OF SERVICE**