# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **CLARA RACHAL** | **CIVIL DOCKET NO. 1:21-CV-00334** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **NATCHITOCHES NURSING & REHABILITATION CENTER LLC, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS ("the Motion") [Doc. 6] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants, Natchitoches Nursing and Rehabilitation Center, LLC ("NNRC") and Kacey Masters ("Masters"). For the reasons set forth below, the Motion is DENIED, and the parties are directed to engage in a period of limited discovery to determine whether the Plaintiff's claims, or any portion thereof, are encompassed by the PREP Act, 42 U.S.C. § 247d-6d.

### FACTUAL AND PROCEDURAL HISTORY

On April 29, 2020, after allegedly contracting COVID-19 while residing at the Natchitoches Nursing and Rehabilitation Center, Plaintiff Clara Rachal filed the instant lawsuit in the 10th Judicial District Court, Natchitoches, Louisiana, ("10th JDC") against Defendants.[1] [Doc. 1-4]. In her Petition for Damages ("the Petition"), Plaintiff seeks damages resulting from Defendants' alleged negligent and grossly negligent conduct in connection with her contraction of the virus. [*Id.*]. In essence, Plaintiff's claims are premised on Defendants' alleged failure to appropriately care

---

[1] Defendant Miranda Green did not join in the pending Motion to Dismiss because she had not been served with process in this lawsuit as of the date the Motion was filed. [Doc. 6].

Page **1** of 13

for Plaintiff and take adequate precautions to prevent the spread of COVID-19. The specific allegations asserted against Defendants in the Petition are as follows:

- Failing to take timely, proper and effective actions to eliminate and/or minimize the risk for Ms. Rachal's exposure to COVID-19, aka Coronavirus;

- Failing to timely and adequately assess the risk for Ms. Rachal to COVID-19 aka Coronavirus, and to initiate an appropriate level of preventative actions, interventions and measures to prevent her exposure to and potential for contracting this virus;

- Failing to timely and properly monitor, detect symptoms, test, and diagnose Ms. Rachal for COVID-19 virus aka Coronavirus condition, or to make appointments with other healthcare providers for such services;[2]

- Failing to timely and properly provide or make available appropriate medical attention to Ms. Rachal for the Covid-19 virus aka Coronavirus condition;

- Failing to develop and implement a care plan with proper regard to the needs of Ms. Rachal;

- Deviation from the standard of care owed by defendants' staff, nurses, aides and other representatives of defendant to its physically and/or mentally impaired clients;

- Failing to do all things necessary and proper in the circumstances to reduce the risk of Ms. Rachal being exposed to and contracting COVID-19 virus aka Coronavirus resulting in the severe decline in her physical and mental conditions;

- Failing to exercise reasonable and proper judgment;

- Charting and documentation errors;

- Failing to initiate proper protocols to sanitize defendant's facility, including the areas of the facility where Ms. Rachal was located;

- Failing to appropriately train and supervise staff;

- Failing to adhere to the accepted standards of medical care required under the circumstances;

---

[2] The allegation concerning the failure "to make appointments with other healthcare providers for such services" is directed only toward the NNRC.

- Failing to properly follow and implement doctors' orders and care plans;

- Failing to properly follow and implement the guidelines and recommendations of the WHO, CDC, LDH, and common sense guidelines for taking care of elderly patients in a nursing home setting during a global pandemic.

[Doc. 1-4].

On February 8, 2021, Defendants removed this action on the basis of federal question jurisdiction, 28 U.S.C. § 1331. [Doc. 1].[3] On February 15, 2021, Defendants

---

[3]   Concurrent with its filing of this Memorandum Ruling, the Court is remanding on timeliness grounds seven other related cases removed to this Court from the 10th JDC on the same date. *See, e.g., Herbert Beaudion, et al. v. Natchitoches Nursing and Rehabilitation Center LLC, et al.,* W.D. of La. Case No. 1:21-cv-00329. Plaintiff in this case, however, did not file a motion to remand and, accordingly, any procedural defects to this removal have been waived. *See Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 549 (5th Cir. 2020) (explaining that a plaintiff waives any objection to procedural defects if a motion to remand is not timely filed after removal). Notwithstanding Plaintiff's waiver of procedural objections, subject matter jurisdiction cannot be waived and should be considered when fairly in doubt. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Because the Motion before the Court is dispositive as to the claims asserted and the Court has not elsewhere addressed the issue of subject matter jurisdiction, the Court will briefly address it here.

Defendants premise their removal to federal court on the contention that the Public Readiness and Emergency Preparedness Act ("PREP Act") is a "complete preemption" statute that creates federal question jurisdiction. [Doc. 1]. District courts across the country have examined whether the PREP Act is a complete preemption statute and have arrived at varying conclusions. *See e.g., Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021); *Garcia v. Welltower OpCo Group LLC*, 2021 WL 492581 (C.D. Cal. Feb. 10, 2021). For the reasons that follow, the Court finds that the PREP Act is a complete preemption statute, thus creating a federal cause of action as specified therein.

To establish complete preemption for purposes of federal question jurisdiction, Fifth Circuit jurisprudence requires that a defendant must show: (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is a clear Congressional intent that claims brought under the federal law be exclusive. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 544 (5th Cir. 2005). The PREP Act contains each of these elements as to claims falling within its scope. To illustrate this point, it is instructive to compare the principal components of the PREP Act and the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") passed in the wake of the September 11, 2001, terrorist attacks, which the Second Circuit held was a complete preemption statute. Pub.L. No. 107-42, 115 Stat. 230 (2001) (codified at 49 U.S.C. § 40101); *In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005). Instrumental to the Second Circuit's analysis was the ATSSSA's statutory components, which consist of: (i) the creation of a Victim Compensation Fund to provide relief, without

filed the instant Motion to Dismiss, contending that the PREP Act warrants either dismissal of Plaintiff's claims in their entirety or a transfer of this action to the United States District Court for the District of Columbia. [Doc. 6]. The Court heard oral argument on April 1, 2021, and the Motion is now ripe for ruling. [Doc. 12].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

litigation, to individuals (or relatives of deceased individuals) physically injured or killed as a result of the September 11 attacks; (ii) immunity to the airlines; (iii) a federal cause of action as the exclusive judicial remedy for damages arising out of the attacks; and (iv) an exclusive venue in the United States District Court for the Southern District of New York for all suits brought on that federal cause of action. *In re WTC Disaster Site*, 414 F.3d at 373. Significantly, the composition of the PREP Act is very similar in that it: (i) creates a Covered Countermeasure Process Fund to provide relief, without litigation, to eligible individuals for "covered injuries" directly caused by the administration or use of a "covered countermeasure;" (ii) provides immunity to "covered persons," except in the case of "willful misconduct;" (iii) creates an exclusive federal cause of action for damages against a covered person for willful misconduct; and (iv) provides that the federal court in the District of Columbia is the exclusive federal venue for suits on the federal cause of action. 42 U.S.C. § 247d-6(d); 42 U.S.C. § 247d-6(e).

Further, the PREP Act states that the remedy available in the Covered Countermeasure Process Fund "shall be exclusive of any other civil action or proceeding for any claim or suit this section encompasses," with the exception of the federal cause of action for damages against a "covered person" for willful misconduct. *Id.* § 247d-6(d). The Court concludes that, together, these provisions demonstrate Congress's intent that the PREP Act exclusively encompass "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a)(1). Accordingly, to the extent Plaintiff's alleged loss was caused by a "covered person" and arose out of, related to, or resulted from the administration to or the use by an individual of a "covered countermeasure," this Court has federal question jurisdiction to apply the provisions of the PREP Act.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard does not require "detailed factual allegations;" mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id*. at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court must accept all factual allegations as true and construe the facts in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). Further, "[a]lthough dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)).

## LAW AND ANALYSIS

**I.     The PREP Act**

Congress has delegated authority to "[t]he Secretary of Health and Human Services [to] lead all Federal public health and medical response to" national public health emergencies. 42 U.S.C. § 300hh. In executing this responsibility, the Secretary of Health and Human Services ("Secretary" or "HHS Secretary") is tasked with promoting "[r]apid distribution and administration of medical countermeasures" in response to a public health emergency. *Id.* § 300hh-1(b)(2)(D). Passed in 2005, the PREP Act vests the Secretary with authority to determine that a disease or other threat to health constitutes a public health emergency and to issue a declaration recommending administration of specified countermeasures. *See id.* § 247d-6d(b)(1).

Once the Secretary has issued a declaration, the PREP Act provides broad immunity "from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure..." to "covered persons," provided the Secretary has issued a declaration with respect to such countermeasures. *Id.* § 247d-6d(a)(1). This statutory immunity applies to damages resulting from the "design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use" of "covered countermeasures." *Id.* § 247d-6d(a)(2)(B).

The PREP Act also establishes two avenues for recovery of damages from "covered injuries": a compensation fund and an exclusive federal cause of action. The compensation fund, *i.e.*, the "Covered Countermeasure Process Fund," provides "compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." *Id.* § 247d-6e(a). Additionally, for loss caused by "willful misconduct," the PREP Act provides that "the sole exception to the immunity from suit and liability of covered persons ... shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct ... by such covered person." *Id.* § 247d-6d(d)(1). This federal cause of action is required to be brought and maintained only in the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1).

On March 17, 2020, in response to the COVID-19 pandemic, the Secretary issued the "Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19" ("Declaration"). 85 Fed. Reg. 15198 (Mar. 17, 2020). The Declaration essentially recommends the use of various covered countermeasures and provides PREP Act's immunity and recovery mechanisms to covered persons for activities related to medical countermeasures against COVID-19.

Since its original issuance on March 17, 2020, the HHS Secretary has amended the Declaration seven times.[4] Additionally, the Office of General Counsel for the HHS

---

[4] *See* First Amended Declaration, 85 Fed. Reg. 21012 (Apr. 15, 2020); Second Amended Declaration, 85 Fed. Reg. 35100 (June 8, 2020); Third Amended Declaration, 85 Fed. Reg.

Secretary ("OGC") has issued six advisory opinions clarifying the Secretary's Declaration and subsequent amendments. In his Fourth Amended Declaration, the Secretary stated that "the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions). The Declaration incorporates the Advisory Opinions for that purpose." 85 Fed. Reg. 79190 (Dec. 9, 2020).

## II. Coverage of Plaintiff's Claims Under the PREP Act

Defendants argue that their Motion should be granted because the PREP Act provides them immunity from suit and liability in this forum. In the alternative, Defendants maintain that this action should be transferred to the United States District Court for the District of Columbia – the exclusive federal venue for suits on causes of action falling within the scope of the PREP Act. In order for this Court to grant the relief sought in this Motion, Defendants must prove from the face of Plaintiff's Petition: (i) that Defendants are covered persons as defined by the PREP Act; and (ii) that Plaintiff's claims against them are "for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). For the following reasons, the Court finds that although the Defendants are clearly "covered persons," it is not clear

---

52136 (Aug. 24, 2020); Fourth Amended Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020); Fifth Amended Declaration, 86 Fed. Reg. 7872 (Feb. 2, 2021); Sixth Amended Declaration, 86 Fed. Reg. 9516 (Feb. 16, 2021); Seventh Amended Declaration, 86 Fed. Reg. 14462 (March 16, 2021).

from the face of the Petition that the entirety of the claims at issue relate to Defendants' administration or use of covered countermeasures.

### a) Covered Persons

A covered person under the PREP Act includes: (A) the United States or (B) a person or entity that is: (i) a manufacturer of [a covered] countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described in clauses (i), (ii), (iii), or (iv). *Id.* § 247d-6d(i)(2). Here, Defendants contend that they qualify as covered persons because they are program planners under subsection (B)(iii).

The NNRC is a skilled nursing facility licensed by the State of Louisiana. [Doc. 6-1]. Neither the text of the statute nor the Secretary's Declaration expressly includes skilled nursing facilities within the definition of "covered person." However, the OGC's October 2020 Advisory Opinion states:

> [A]ny individual or organization can potentially be a program planner and receive PREP Act coverage. So for example, private businesses, public and private transportation providers, public and private schools, and religious organizations are all eligible for PREP Act coverage when they act in accordance with the PREP Act and the Declaration.

[Advisory Opinion 20-04, Doc. 6-9]. Moreover, the OGC has issued at least one opinion letter in response to a specific inquiry that concludes "senior living communities are 'covered persons' under the PREP Act when they provide a facility to administer or

use a covered countermeasure in accordance with the Secretary's March 10, 2020 Declaration under the PREP Act." This letter specifically provides:

> [A] senior living community meets the definition of a 'program planner' to the extent that is supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility to administer or use a Covered Countermeasure in accordance with' the Declaration.

[*Id.*]. Thus, the Court deems the NNRC a covered person under the PREP Act to the extent it provided covered countermeasures to its residents.

Masters is a former Executive Director of the NNRC who was responsible for overseeing the facility's day-to-day operations. [Doc. 6-1]. The Declaration clearly provides that a private sector employer or other person is considered a program planner when he or she carries out statutorily prescribed activities. [Doc. 6-3]. Masters is therefore covered under the PREP Act to the same extent as NNRC.

### b) Covered Countermeasures

Next, the Court must examine whether it can decide, from the face of the Petition, whether Plaintiff's claims relate solely to the Defendants' administration of "covered countermeasures." The PREP Act, in sum, defines covered countermeasure as a drug, biological product, or device that is a "qualified pandemic or epidemic product" or a "security countermeasure," or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act. 42 U.S.C. § 247d-6d(i)(1).

In an Advisory Opinion published on January 8, 2021 (the "January 8th AO") the OGC addressed the scope of the PREP Act with respect to covered countermeasures. [Advisory Opinion 21-01, Doc. 6-7]. Therein, the OGC took a broad

view of the applicability of the PREP Act as it relates to claims against nursing homes and other healthcare providers for failing to provide sufficient personal protective equipment ("PPE") or adequate training on the use of PPE. *Id*. Notably, the OGC rejected the position adopted by some courts that if a covered countermeasure were not used, then there is no PREP Act immunity. [*Id*.]. The OGC did agree, however, that total inaction is not covered by the PREP Act. Importantly, the OGC stated that the PREP Act extends immunity to covered persons for anything "relating to" the administration of a covered countermeasure. [*Id*.]. According to the OGC, only in instances of nonfeasance, *i.e.,* where "defendant's culpability is the result of its failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or other covered person," would complete preemption not apply. [*Id*.].

In examining whether Plaintiff's claims relate to covered countermeasures, the Court finds that some deference to HHS's interpretation of the PREP Act is appropriate, given: (i) the PREP Act's broad grant of authority to the HHS Secretary; (ii) the Secretary's express incorporation of the OGC's Advisory Opinions into the Declarations for purposes of construing the PREP Act; (iii) the complexity of the relevant statutory provisions; (iv) the technical nature of the subject matter; and (v) the need for uniformity in the judiciary's interpretation of the PREP Act across the United States. *See Chevron, Inc. v. NDRC, Inc.*, 467 U.S. 837, 843 (1984); *United States v. Mead Corp.*, 533 U.S. 218, 220 (2001) ("an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency ... and given the value of

uniformity in its administrative and judicial understandings of what a national law requires"). The Court further finds that HHS's interpretation of the PREP Act and its scope is reasonable. *See Kornman & Associates, Inc. v. United States*, 527 F.3d 443, 455 (5th Cir. 2008) (Reasonable agency interpretations carry "at least some added persuasive force" and may "seek a respect proportional to [their] power to persuade" where *Chevron* deference is inapplicable) (quoting *Mead Corp.*, 533 U.S. at 235).

If Plaintiff's claims against Defendants relate to covered countermeasures, then the Defendants are immune from suit and liability in this forum and this matter must be dismissed. However, if all or some of the allegations do not relate to covered countermeasures, then the Court is without subject matter jurisdiction and must remand those claims back to state court. From the face of the Petition and at this stage in the litigation, the Court is unable to determine as a matter of law that each of the Plaintiff's claims relate to "the administration or the use by an individual of a covered countermeasure." Accordingly, the Court DENIES the Motion to Dismiss and orders the parties to engage in a period of limited jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Doc. 6] is DENIED.

IT IS FURTHER ORDERED that the parties are to engage in a 90-day discovery period, during which the parties are directed to conduct discovery as to the nature of Plaintiff's claims, including Defendants' specific acts of alleged misconduct

and whether such acts are "covered countermeasures" under the PREP Act. At the end of this discovery period, the parties are to submit briefing on the scope of the PREP Act as applied to the facts underlying Plaintiff's claims.

THUS, DONE AND SIGNED in Chambers on this 30th day of April 2021.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE